FIREMAN'S FUND INSURANCE COMPANY, PLAINTIFF-RE-
SPONDENT AND CROSS-APPELLANT, v. SECURITY IN-
SURANCE COMPANY OF HARTFORD, DEFENDANT-AP-
PELLANT AND CROSS-RESPONDENT.

Argued December 1, 1975—Decided December 7, 1976.

64

*Mr. Joseph J. Bergamino* argued the cause for Security Insurance Company of Hartford (*Messrs. Bergamino and DeGonge,* attorneys).

*Mr. Charles H. Hoens, Jr.* argued the cause for Fireman's Fund Insurance Company (*Messrs. Lum, Biunno and Tompkins,* attorneys).

The opinion of the court was delivered by

Kolovsky, P. J. A. D., Temporarily Assigned. The malpractice liability insurance policy issued by defendant insurance company includes the following provisions with respect to malpractice claims asserted or suits instituted against its insured:

> "* * * the company may make such investigation and, with the written consent of the insured, such settlement of any claim or suit as it deems expedient.
> ⁂ ⁂ ⁂
> The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits, * * *. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.
> ⁂ ⁂ ⁂
> No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company, * * *."

The principal question presented on this appeal is the effect, in any, to be given to those provisions in a situation in which it appears that: (a) the potential award against the insured is far in excess of the policy limits; (b) the plaintiffs in the malpractice action have offered to settle for an amount greater than the policy limits but much less than the amount of their potential recovery; and (c) the insured reasonably concluded that the settlement offer should be accepted and that the insurance company, in refusing to

contribute its policy limits to the settlement, is acting in bad faith — a fact established in the later action instituted on the insured's behalf against the insurance company.

Both the trial court and the Appellate Division rule, in unreported opinions, that in such circumstances the insured may proceed to effectuate a reasonable good faith settlement for an amount in excess of the policy limits and, upon proof of the insurer's bad faith, may recover from it the amount of its policy limits even though no judgment had been entered in the malpractice actions against the insured. That ruling is challenged by defendant in its appeal to this court upon certification granted. 68 *N. J.* 143 (1975). On plaintiff's appeal, upon certification also granted, 68 *N. J.* 278 (1975), it seeks a reversal of the Appellate Division's affirmance of the trial court's refusal to award it punitive damages.

The instant litigation stems from two malpractice actions which had been instituted against a firm of attorneys who had represented a limited partnership and a corporation. The plaintiff in one of the actions was the receiver of the limited partnership. The plaintiffs in the second action were the directors of the corporation who had been named as defendants in an action in the Chancery Division instituted by the receiver.

It is conceded that primary insurance coverage to the extent of $50,000 was afforded to the law firm (the insureds) with respect to those malpractice claims under a lawyer's professional liability policy issued by New Amsterdam Casualty Company, a predecessor of defendant Security Insurance Company of Hartford (Security). A similar policy issued by plaintiff Fireman's Fund Insurance Company (Fireman's) afforded excess coverage to the law firm to the extent of $250,000. Both insurance companies designated one attorney to defend the malpractice actions on behalf of their insured.

Shortly before those actions were to come to trial, the plaintiffs therein expressed a willingness to settle for

$147,000. Defendant refused to settle or to contribute the $50,000 limit of its policy toward the required settlement amount — this despite the request of its insured and the recommendation of the trial attorney and of Fireman's that it do so.

The insured, with the financial cooperation of Fireman's, then settled the malpractice actions for $135,000. This action to recover $50,000 plus interest and punitive damages was instituted by Fireman's, as assignee of the insured.[1] The trial court found, as Fireman's and the insureds had alleged, that Security had acted in bad faith in refusing to settle and that the $135,000 settlement was reasonable and made in good faith. The court awarded Fireman's compensatory damages of $50,000 plus interest in the amount of $11,161.60, but denied its prayer for punitive damages. On appeals taken by both defendant and plaintiff, the Appellate Division affirmed.

Security offers no serious challenge to the finding that it had acted in bad faith in refusing to contribute its policy limits towards the proposed settlement. Indeed, no basis for such a challenge appears in the proofs, which are summarized in the lower court opinions.

Security, whose policy limit was $50,000, knew that if there were an adverse verdict in the malpractice actions the damages awarded would exceed $400,000 and might go as high as $542,000. Nevertheless, in disregard of its acknowledged fiduciary duty to its insured, *Rova Farms Resort v. Investors Ins. Co.,* 65 *N. J.* 474, 496 (1974), and its obligation to treat the settlement offer of $147,500 "as if it had full coverage for whatever verdict might be recovered, regardless of policy limits, and makes its decision to settle or go to trial on that basis," *Bowers v. Camden Fire Ins. Assoc.,* 51 *N. J.* 62, 71–72 (1968), it gave only

---

[1] The parties agree that plaintiff's status is no different than that of the insured and that no additional rights flow to it because it was an excess insurer.

perfunctory, if any, consideration to the recommendations for settlement of those most familiar with the litigation and best in a position to evaluate the likelihood of a successful defense of the action — the attorney it had designated to defend the malpractice actions, the expert he had retained to testify at the trial, the insured law firm, Security's local claim manager and Fireman's.

Security chose to ignore its obligation to make an honest, intelligent and good faith evaluation of the case for settlement purposes and to weigh the probabilities in a fair manner. *Cf. Radio Taxi Service, Inc. v. Lincoln Mutual Insurance Co.,* 31 *N. J.* 299, 305 (1960) ; *Knobloch v. Royal Globe Ins. Co.,* 38 *N. Y.* 2d 471, 381 *N. Y. S.* 2d 433, 344 *N. E.* 2d 364 (Ct. App. 1976). It adopted that course even though it knew that if the favorable settlement offered by the plaintiffs in the malpractice actions was ever to be accomplished, it had to be accomplished promptly and in conjunction with a proposed settlement of an action which had been instituted by the receiver against the corporate directors in the Chancery Division, in which the trial was imminent. The "package" settlement offered by the receiver, and approved by the Chancery Division judge who appointed him, required the corporate directors to agree not only that all the moneys to be paid in settlement of the two malpractice actions should belong to the receiver, but also that the directors should pay the receiver additional sums out of their own funds.

Security's conduct amounted to a repudiation of the obligation it owed its insured under the policy.

Nevertheless, Security contends that there may be no recovery against it based on the settlement made by the insureds because no judgment had been entered against its insureds in the malpractice actions and the settlement ultimately made — whose reasonableness is no longer disputed — had not been authorized by it. It contends that, despite its bad faith, it is entitled to rely on the rights reserved to it by

the "settlement" and "no action" provisions of the policy quoted at the outset of this opinion.

In support of its contentions, Security argues:

"An insurer should not be deprived of its right to settlement because it is guilty of bad faith in refusing to participate in settlement prior to trial. A continuing test of its abuse of the right to settle must be made up until judgment is entered. The insured suffers no detriment except the inconvenience of trial while he awaits the outcome. His right to recover against the insurer is preserved and, of course, under *Rova Farms, supra,* he need not prove a case of bad faith against the carrier. If the judgment is in excess of his limits where there is a failure to settle within its limits, the carrier is 'automatically' liable to the insured for the over-the-limit judgment. We respectfully submit that the adoption of a rule allowing an insured to settle a pending case, prior to entry of judgment and then sue his carrier in bad faith would be a step backward from the landmark holding in *Rova Farms, supra.* Bad faith would have to be proved by the insured in a subsequent trial and the insured might be guilty of estoppel where he fails to take over settlement upon an insurer's refusal to participate in settlement. Under *Rova Farms, supra,* bad faith need not be proved after judgment and the insured need not participate in settlement negotiations prior to trial."

Were the holding in *Rova Farms, supra,* what Security says it was, then indeed there would have been no reason for the insured to be concerned with a settlement of the malpractice actions or the potential award if those actions were tried, since Security's failure to settle would make it liable for the full amount of any judgment ultimately recovered even if it had acted in good faith in rejecting the settlement offer.

However, Security's argument is bottomed on an erroneous interpretation of our opinion in *Rova Farms, supra.* Contrary to what Security contends, *Rova* did not eliminate "bad faith" as one of the factors to be proven where an action is instituted by an insured against his insurer based on its refusal to settle. Nor did we in *Rova* adopt a rule making the insurer "automatically liable to the insured for the over the limit judgment." While the opinion in *Rova* did suggest that it might be desirable "one day" to adopt such a rule, it concluded that "it is unnecessary in the instant

case to embrace such an extended rule" (65 *N. J.* at 502), and such a rule has never been adopted.

There being no substance in the argument thus presented in unwarranted reliance on *Rova,* we turn next to a consideration of Security's argument that in any event — despite its bad faith and the fact that the potential recovery and the amount of the settlement were far in excess of its policy limits — it is entitled to rely on the quoted policy provisions as a bar to this action. It contends that there is no warrant for depriving it of the rights reserved to it by the policy, conditioning recovery in any action against it on either a prior recovery of a judgment against its insureds or a settlement agreed to by both it and its insureds. We disagree.

While the right to control settlements reserved to insurers is an important and significant provision of the policy contract, *Radio Taxi Service, Inc. v. Lincoln Mutual Insurance Co., supra* 31 *N. J.* at 305; *Condenser Service, etc., Co. v. American, etc., Ins. Co.,* 45 *N. J. Super.* 31, 41 (App. Div. 1957), it is a right which an insurer forfeits when it violates its own contractual obligation to the insured. As we said in *Warren v. The Employers' Fire Insurance Co.,* 53 *N. J.* 308. 311–312 (1969):

"* * * Before an insurance company will be heard to allege the breach of a contractual provision by plaintiff, the insurance company must be able to assert its own lack of any breach."

So it is settled, as stated in *N. J. Mfgrs. Ind. Ins. Co. v. U. S. Cas. Co.,* 91 *N. J. Super.* 404, 407–408 (App. Div. 1966):

"* * * Where an insurer wrongfully refuses coverage and a defense to its insured, so that the insured is obliged to defend himself in an action later held to be covered by the policy, the insurer is liable for the amount of the judgment obtained against the insured or of the settlement made by him. * * * The only qualifications to this rule are that the amount paid in settlement be reasonable, and that the payment be made in good faith."

See also Annotation, "Liability Insurer — Refusal to Defend," 49 *A. L. R.* 2d 694 (1956).

■ ■ As noted in the cited annotation, the specific consequences of the insurer's unjustified refusal to comply with its contractual obligation to defend include the forfeiture of the insurer's right to insist on compliance by the insured with prohibitory policy provisions, such as the "no action" clause here involved and those prohibiting settlement and "voluntary" payment by the insured. 49 *A. L. R.* 2d at 743–754.

Security would distinguish those cases and authorities because they involve breaches by the insurers of express provisions of the policy requiring the insurer to afford a defense to the insured. That asserted distinction has no validity. It ignores that there is also embodied in the policy contract an implied covenant of good faith and fair dealing with which the insurer must comply before seeking to rely on the powers reserved to it by the language of the policy contract, even though that language, read literally, gives the insurer the absolute, unrestricted right to exercise those powers.

The policy is a contract, to which applies, in full measure the rule that:

"* * * In every contract there is an implied covenant that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing.' 5 *Williston on Contracts* § 670, 159–160 (3d. ed. 1961)." [*Association Group Life, Inc. v. Catholic War Vets. of U. S.*, 61 *N. J.* 150, 153 (1972)].

See also *Palisades Properties, Inc. v. Brunetti*, 44 *N. J.* 117, 130 (1965) and *Bak-A-Lum Corp. v. Alcoa Building Prod.*, 69 *N. J.* 123, 129–130 (1976).

That Security's breach was not of its express covenant to afford its insureds a defense but rather of its implied covenant to exercise good faith in considering an offer to

settle for an amount in excess of its policy limits is of no moment.

"[T]he insurer's obligation to act in good faith for the insured's interests may be breached in other ways than by refusing or neglecting to defend a suit." *Isadore Rosen & Sons, Inc. v. Security Mutual Ins. Co.*, 31 *N. Y.* 2d 343, 339 *N. Y. S.* 2d 97, 101, 291 *N. E.* 2d 380, 382 (1972).

See also *Hand v. Northwestern National Ins. Co.*, 255 *Ark.* 802, 502 *S. W.* 2d 474 (1973).

The breach of an insurer's covenant, whether it be express or implied, leaves the insured free, despite the limiting policy provisions, to protect his own interest in minimizing a potential liability in excess of the policy limits by agreeing to a reasonable good faith settlement of the negligence actions and then, on proof of the insurer's default, to recover from it the amount of its policy limits.

Although liability policies generally provide, as does Security's in this case, that "the company may make such investigation * * * of any claim or suit as it deems expedient," it is recognized that considerations of good faith and fair dealing require that the insurer make such investigation within a reasonable time. If the insurer delays unreasonably in investigating and dealing with a claim asserted against its insured, the insured may make a good faith reasonable settlement and then recover the settlement amount from the insurer, despite the policy provision conditioning recovery against the insurer on its policy on the prior entry of a judgment against the insured or acquiescence by the insurer in the settlement. *Isadore Rosen & Sons, Inc. v. Security Mutual Ins. Co., supra; Otteman v. Interstate Fire & Casualty Co.*, 172 *Neb.* 574, 111 *N. W.* 2d 97 (Sup. Ct. 1961) ; *Hand v. Northwestern National Insurance Co., supra*.

The court's comments in *Isadore Rosen & Sons, Inc. v. Security Mutual Ins. Co., supra*, are instructive:

The New York rule is that where an insurer " 'unjustifiably refuses to defend a suit, the insured may make a reasonable settlement

or compromise of the injured party's claim, and is then entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlements made without the insurer's consent'" (*Matter of Empire State Sur. Co.*, 214 *N. Y.* 553, 563, 108 *N. E.* 825, opn. per Seabury, J., restated in *Cardinal v. State of New York*, 304 *N. Y.* 400, 410, 107 *N. E.* 2d 569, 573).

*But the insurer's obligation to act in good faith for the insured's interests may be breached in other ways than by refusing or neglecting to defend a suit.* It may be breached by neglect and failure to act protectively when the insured is compelled to make settlement at his peril; and unreasonable delay by the insurer, in dealing with a claim, may be one form of refusal to perform which could justify settlement by the insured.

This seems the general rule: "The provision against settlement by insured cannot be taken advantage of by insurer, where it unreasonably delays to take any action, after notice of the claim" (45 *C. J. S.. Insurance* § 937, subd. b, p. 1072; see *Home Ind. Co. v. Snowden*, 223 *Ark.* 64, 264 *S. W.* 2d 642; *Interstate Cas. Co. v. Wallins Creek Coal Co.*, 164 *Ky.* 778, 176 *S. W.* 217). [339 *N. Y. S.* 2d at 101, 291 *N. E.* 2d at 382–3]. (Emphasis added).

■ So, too, where a policy, as in this case, provides that "the company may make, * * * with the written consent of the insured, such settlement of any claim or suit as it deems expedient," there is implicit in the power thus reserved to the insurer an obligation that the insurer exercise its reserved power in good faith and with concern for the interests of the insured.

■ The consequences of a breach of that obligation differ depending on whether, viewed as of the time the settlement offer is being considered, the potential award is within or beyond the limits of the policy. If the potential loss is within the policy limits, then there is no reason to deprive the insurer — the only one appearing to have a pecuniary interest in the ultimate liability and the only source of the funds to be paid in settlement — of its absolute right to control the litigation. *Traders & General Ins. Co. v. Rudco Oil & Gas Co.,* 129 *F.* 2d 621, 626 (10th Cir. 1942). In such a situation, even though the insured may deem the refusal of the insurer to settle to be in bad faith, since *prima facie* the insured's pecuniary interest does not appear to be involved, it is appropriate to hold that the insured has no

alternative but to await the trial of the negligence action and, if it results in a judgment in the claimant's favor in excess of the policy limits, then to institute an action against the insurer to recover the amount of the policy limits and in addition the amount by which the judgment exceeded the amount for which the claimant was willing to settle. *Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra,* at 626.

A different situation is presented when, viewed as of the time the settlement offer is received, the potential loss and the proposed settlement exceed, as they did here by far, the limits of the policy. In such a situation, the insured may, but he need not await the outcome of the trial of the negligence action. He should not "be required to wait until after the storm before seeking refuge" when faced with "a potential judgment far in excess of the limits of the policy." *Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra,* at 627.

He should be and is permitted, as in other cases in which the insurer has breached its obligations, to proceed to make a prudent good faith settlement for an amount in excess of the policy limits and then, upon proof of the breach of the insurer's obligation and the reasonableness and good faith of the settlement made, to recover the amount of the policy limits from the insurer. *Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra; Evans v. Continental Cas. Co.,* 40 *Wash.* 2d 614, 245 *P.* 2d 470 (1952); *Home Indemnity Co. v. Snowden,* 223 *Ark.* 64, 264 *S. W.* 2d 642 (1954); see also Annotation: "Liability Insurer — Duty to Settle," 40 *A. L. R.* 2d 168, 193–4 (1955).

Apposite is what the court said in *Evans v. Continental Cas. Co., supra*:

An insured can recover from his insurer the amount of a judgment rendered against him, including the amount in excess of the policy limits, when the insurer has been guilty of bad faith in failing to effect a settlement for a smaller sum. (at 478).

\* \* \*

While there is no question concerning the insurer's liability for the entire amount of a *judgment* where it has been guilty of bad faith, the question remains: Should an insured be permitted to *settle* the tort claims under such circumstances and then recover from the insurer the amount paid in settlement together with his reasonable attorney fees and expenses?

We are of the opinion that the insured should recover the amounts so paid, up to the policy limits, provided that such sums were reasonable and were paid in good faith.

\* \*' \*

The situation presented here does not differ in principle from that in which the insurer denies liability and refuses to defend. While it has been held that under those circumstances there is no duty on the insured to mitigate damages by effecting a favorable settlement, *Carthage Stone Co. v. Travelers' Ins. Co.*, 274 *Mo.* 537, 203 *S. W.* 822, it is well established that the insured may settle and recover from the insurer. *St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co.*, 201 *U. S.* 173, 26 *S. Ct.* 400, 50 *L. Ed.* 712; *Traders & General Ins. Co. v. Rudco Oil & Gas Co.*, 10 *Cir.*, 129 *F.* 2d 621, 627, 142 *A. L. R.* 799; 8 *Appleman, Insurance*, 33, § 4690.

The similarity between the facts of the Rudco Oil case and those of the present action makes much of what the court said in that decision appropriate here. In upholding the right of the Rudco Oil & Gas Co. to recover of its insurer the sum paid in prudent settlement of a claim the court said:

"We think, however, the rule [that the insurer must exercise good faith and honest judgment in its approach to settlement negotiations] applies with equal force to a prudent settlement made by the assured in the face of a potential judgment far in excess of the limits of the policy. Why should the assured be required to wait until after the storm before seeking refuge.

"Therefore, as a guide for the determination of the question presented here, we think it may be fairly stated that before Traders & General [the insurer] may interpose the voluntary settlement made by Rudco as a bar to recovery upon the policy, it must be shown that it acted, not alone in furtherance of its own interest, but it must also appear that it acted in good faith and dealt fairly with the assured. Its manifest attitude and course of conduct must have some legal justification and factual basis.

"Rudco was faced with suits aggregating $63,000 for personal injuries and death, arising out of its alleged negligent conduct. The injuries were admittedly serious and the element of damages gross and palpable. It was conscientiously convinced of its negligent liability. The limit of its protection under its policy was $10,000; its potential loss was therefore far greater than that of the Traders & General. Traders & General had investigated the claims; it is its business to appraise potential liability and losses. In the face of the facts shown upon the record, Traders & General had no standing to contend against the liability of Rudco, or the likelihood of a re-

covery far in excess of the limits of the policy. Rudco had the right to demand not a settlement on its terms and conditions, *but a good faith co-operation on the part of Traders & General, wherein both parties would face the facts realistically and with a mutual respect for the interest of each.*

\* \* \*

"*Each of the parties to the contract owed to the other an express and implied duty to respect its rights and interests, and to approach the common problem realistically with open hands and without concealed weapons.*

\* \* \*

"We recognize the evils inherent in any rule which permits, or justifies, a compromise or settlement by the assured without the consent of the insurer, yet we are unwilling to say that in no circumstances is such conduct justified.

"Under the peculiar facts, shown here to exist, we hold that the course of conduct pursued by the Traders & General does not square with the standard of good faith and fair dealing which underlies the contract between the parties, and it is therefore without standing to assert its only defense." (Italics ours.) [245 *P.* 2d at 479–480].

Two points made in the dissenting opinion require brief comment.

The dissent concedes that the holdings in *Traders & General Ins. Co. v. Rudco Gas & Oil Co., supra, Evans v. Continental Gas Co., supra,* and *Home Indemnity Co. v. Snowden, supra,* are authority for the rule for which we have cited them. However, it suggests that the decisions adverse to the insurers in two of those cases, *Traders General* and *Evans,* should have been bottomed not on the bad faith refusal of the insurers to settle but on a finding that the insurer in each had refused to defend or had denied coverage.

In those two cases the insureds did contend, among other things that there had been, in effect, a refusal to defend because: (a) in *Evans v. Continental Cas. Co., supra,* the insurer, after filing answers on its insured's behalf in the negligence actions had demanded that its insured sign a "reservation of rights" letter; and (b) in *Traders & General Ins. Co. v. Rudco Gas & Oil Co., supra,* the insurer had filed answers in the negligence actions after obtaining a reservation of rights letter and then had filed a declaratory judgment action seeking a determination that there was no coverage. However,

in each case, the court expressly chose not to base its decision on the ground so asserted. (see *Evans, supra,* 245 *P.* 2d at 480; *Traders, supra,* 129 *F.* 2d at 626) and bottomed its decision solely on the bad faith refusal of the insurer to settle. There is no justification for interpreting those cases as ones in which the insurers' conduct was tantamount to a refusal to defend or an unqualified denial of coverage when the court in each, with the full record before it, refused to do so.

 Finally, we disagree with the assertion in the dissenting opinion that plaintiff did not prove damages from the breach of defendant's obligation because no judgment had been recovered against the insured in the malpractice actions. The dissent argues that absent proof of such a judgment, no damage has been shown because the settlement made by the insured aborted several possible other dispositions of the malpractice actions, viz: (a) a later settlement for a lesser amount; (b) a verdict at trial in favor of the defendants; or (c) a verdict at trial against the defendants in an amount less than the limits of defendant's policy.

However, those possibilities exist in all cases in which the insurer breaches its obligation to its insured and thus forfeits its reserved power to control settlements, be the breach that of its express obligation to defend, of its implied obligation to make a timely investigation of the claim or of its implied obligation to exercise, in good faith and with concern for the interests of the insured, its reserved power with respect to settlements.

In each of those situations, it is uniformly held, as the cases cited earlier in this opinion disclose, that the measure of the insured's damages is *either* the amount of the judgment entered against the insured in the negligence action *or* the amount paid by the insured in making a reasonable good faith settlement of the negligence action before trial. See also *St. Louis Dressed Beef & P. Co. v. Maryland Casualty Co.,* 201 *U. S.* 173, 26 *S. Ct.* 400, 403–404 (1906).

Where the measure of recovery is the amount paid in settlement, the defaulting insurer receives all the protection to which it is entitled from the requirement that the insured, in establishing his damages, prove — as was done here— that the settlement was made in good faith and for a reasonable amount.

What we have ruled leads to a rejection of defendant's appeal, leaving only the issue of whether, as plaintiff contends, it should have been awarded punitive damages. We are satisfied, however, as were the trial court and the Appellate Division, that the necessary requisites to an award of punitive damages are not present.

The judgment is affirmed.

CLIFFORD, J. (dissenting). I could not disagree more with the conclusion that the insured[1] may settle directly with the claimant on this malpractice insurance policy and thereafter recover from the insurer, Security, the full amount of the policy limits. My disagreement stems from a conviction that both sound public policy and the efficient operation of the liability industry militate against this result.

The essential issue is: who had the right to control settlement of the claim — the insured or the insurer? The majority concludes that under the circumstances of this case Security forfeited that "important" and "significant" right (*ante* at 71) by violating its own contractual obligation to

---

[1] As the majority opinion points out, we treat the plaintiff-excess carrier as having precisely the status of the insured for purposes of this case. This is consistent with the general rule under which the excess insurer is subrogated to the insured's rights against the primary carrier. *E. g.. American Fidelity & Cas. Co. v. All American Bus Lines*, 179 *F*. 2d 7 (10th Cir. 1949) ; *St. Paul-Mercury Indemnity Co. v. Martin*, 190 *F*. 2d 455 (10th Cir. 1951) ; *United States Fidelity & Guar. Co. v. Tri-State Ins. Co.*, 285 *F*. 2d 579 (10th Cir. 1960) ; *Transport Ins. Co. v. Michigan Mutual Liability Ins. Co.* 340 *F. Supp.* 670 (E. D. Mich. 1972) ; *Peter v. Travelers Ins. Co.*, 375 *F. Supp.* 1347 (C. D. Calif. 1974) ; *Home Ins. Co. v. Royal Indemnity Co.*, 68 *Misc.* 2d 737, 327 *N. Y. S.* 2d 745 (Sup. Ct. 1972).

the insured. En route to that result the Court obliterates what I believe to be a critical distinction between separate undertakings of the insurer (*ante* at 72). The first kind, set forth in specific language of express provisions in the policy, encompasses (a) the insuring agreement (coverage) and (b) the obligation to defend. The second is a creature of our case law, which has discerned in all contracts an implied covenant of good faith and fair dealing. *Association Group Life, Inc. v. Catholic War Vets. of U. S.,* 61 *N. J.* 150, 153 (1972); see *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 *N. J.* 474, 492 (1974); see generally, Comment, "Insurance Carrier's Duty to Settle: Strict Liability in Excess Liability Cases?", 6 *Seton Hall L. Rev.* 662, 681 (1975); Note, 28 *Rutgers L. Rev.* 309, 338–45 (1974). It is the insurer's breach of the latter, according to the majority, which gives rise to the insured's right to effect settlement itself and thereafter recover from the carrier the full amount of the policy limits — and this in spite of the specific provisions in the policy to the contrary effect in the form of the customary "cooperation" and "no action" clauses contained in the policy and noted in the majority opinion (*ante* at 66).

Specifically the Court holds (*ante* at 75) that

[W]hen, viewed as of the time the settlement offer [of the claimants in the malpractice case] is received, the potential loss and the proposed settlement exceed, as they did here by far, the limits of the policy * * * the insured may, but he need not await the outcome of the trial of the negligence action. He should not "be required to wait until after the storm before seeking refuge" when faced with "a potential judgment far in excess of the limits of the policy." *Traders & General Ins. Co. v. Rudco Oil & Gas Co.,* [129 *F.* 2d 621, 627 (2d Cir. 1942)].

He should be and is permitted, as in other cases in which the insurer has breached its obligations, to proceed to make a prudent good faith settlement for an amount in excess of the policy limits and then, upon proof of the breach of the insurer's obligation and the reasonableness and good faith of the settlement made, to recover the amount of the policy limits from the insurer. *Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra; Evans v. Continental Cas. Co.,* 40 *Wash.* 2d 614, 245 *P.* 2d 470 (1952); *Home Indemnity Co. v. Snowden,* 223 *Ark.* 64, 264 *S. W.* 2d 642 (1954); see also Annota-

tion: "Liability Insurer — Duty to Settle," 40 *A. L. R.* 2d 168, 193–4 (1955).

But while the cases cited in support of the proposition that "bad faith" triggers a right in the insured to settle do in fact lead to that result, *Traders General* and *Evans* do not compel it. In those two instances the company's refusal to settle was accompanied by a refusal to defend or a denial of coverage, which, I suggest, should have been the ground for those decisions (specifically not reached in *Evans*), and to the extent that those cases square with the majority's thesis (as is most closely the situation with *Home Indemnity*, inspiring a vigorous dissent there), I would disavow them as guiding authority.

*Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co., supra,* is illustrative of the point. There the court said:

We think, however, the rule [allowing insured to recover for excess judgment following bad faith refusal to settle] applies with equal force to a prudent settlement made by the assured in the face of a potential judgment far in excess of the limits of the policy. Why should the assured be required to wait until after the storm before seeking refuge.

Therefore as a guide for the determination of the question presented here, we think it may be fairly stated that before Trader & General may interpose the voluntary settlement by Rudco as a bar to recovery upon the policy, it must be shown that it acted, not alone in furtherance of its own interest, but it must also appear that it acted in good faith and dealt fairly with the assured.

[129 *F.* 2d at 627–28.]

The court then went on to determine that the company's *denial of coverage* when coverage was perfectly apparent did not meet this standard, and hence the insured was allowed to recover from the insurer the amount expended in settlement. Even as it reached this conclusion the court readily perceived "the evils inherent in any rule which permits, or justifies, a compromise or settlement by the assured without the consent of the insurer." *Id.* at 628.

Likewise in *Evans v. Continental Cas. Co., supra,* the court used language indicating that the insurance carrier's bad

faith refusal to settle will release the insured from a prohibition against settlement, relying in large measure on *Traders & Gen. Ins. Co., supra,* particularly the passage quoted above from that opinion. But again there was a *qualified refusal to defend and a denial of coverage.*

The significance of this distinction between the breach of an implied covenant of good faith and fair dealing (here in the guise of the carrier's wrongful failure to settle) on the one hand and the insurer's denial of coverage and wrongful refusal to defend on the other is perhaps best brought out by Professor Robert E. Keeton in his article "Liability Insurance and Responsibility for Settlement," 67 *Harv. L. Rev.* 1136, 1162 (1954). Among the points he makes is this: when an insurer refuses to defend, substantial damage is almost certain to result unless the assured acts, while if the insurer defends but merely decides to gamble by not settling, his gamble may pay off in a judgment for the insured at trial. In the latter situation, then, the insured receives protection under existing law: if the gamble was unreasonable and loses, the insurer and not the insured is liable for any excess.[2] If the gamble wins, both are absolved from liability.

The difficulty is that at the time decisions must be made by the parties there is uncertainty both as to whether company is guilty of a wrong in failing to settle and also as to whether any harm will result from such failure. Even if company is guilty of bad faith or negligence in refusing to settle, it is possible that company's gamble will turn out favorably — that trial will result in a judgment against claimant or else for a sum smaller than the proposed settlement figure. In that event the payment by insured for a release (whether of the entire claim or only the excess) would be a loss which would not have been sustained if insured had done nothing; the negligence or bad faith of the company would have caused the insured no loss had the insured kept hands off. The problem, therefore, is not one of mitigation of a loss certain to occur, but rather that one or the other party must choose (his choice affecting interests of both in-

[2]So held in *Radio Taxi Service, Inc. v. Lincoln Mut. Ins. Co.,* 31 *N. J.* 299 (1960) ; *Bowers v. Camden Fire Ins. Ass'n,* 51 *N. J.* 62 (1968) ; *Rova Farms Resort, Inc. v. Investors Ins. Co., supra.*

sured and company) between a certain but moderate loss on the one hand, and on the other hand a gamble which will result in a larger loss, a smaller loss, or no loss it all.

[*Id.* at 1162–63.]

The dilemma referred to at the beginning of the quoted portion above is exactly that which existed in this case. Plaintiff determined unilaterally that Security was acting in bad faith. Moreover, that decision was made at a time when no one could have been certain about the consequences of the carrier's decision. Security was apparently perfectly willing to continue to adhere to its obligation to defend — *and* to bear the consequences of its gamble in refusing to settle in a case where those consequences might very well result in liability for a judgment substantially in excess of its policy limits. But what Security did not do was leave its insured defenseless. If it had, then of course the only way the insured could have protected itself against liability would have been to defend and settle on its own.

The purpose of those policy provisions which grant to the carrier the exclusive control of settlement was recognized almost 40 years ago in *Kinderwater v. Motorists Casualty Ins. Co.*, 120 *N. J. L.* 373, 376–77 (E. & A. 1938):

The design of the provision in question [prohibiting the insured from voluntarily incurring any expenses or incurring any claims] was not only to obviate the risk of a covinous or collusive combination between the assured and the injured third party, but also to restrain the assured from voluntary action materially prejudicial to the insurer's contractual rights, especially in the exercise of its exclusive function to defend claims made under the policy. The assured is enjoined against the voluntary assumption of "*any* liability." This is a necessary corollary of the stipulations reserving to the insurer the exclusive direction and control of the defense of claims so made. The obligation thus imposed is as peremptory as the duty of co-operation laid upon him by the immediately preceding clause and of non-interference in "any negotiations for settlement or legal proceedings" prescribed by the next succeeding provision. They are kindered provisions contrived to achieve the same general objective. A violation of either relieves the insurer from policy liability, regardless of whether actual prejudice has ensued therefrom.

The wisdom of giving effect to these provisions, both from a public policy point of view and from the perspective of effective administration of liability insurance, seems apparent. In order for an insurance carrier effectively to discharge its duty to defend, its control over the negotiation and litigation must be complete, not undercut by the separate undertakings of the insured. By purchasing insurance, the insured acquires the expertise and competence of the carrier in claims proceedings. This in turn necessitates a turning over of complete control to the insurer. Likewise, the insured is under the obligation to cooperate with the insurer, and to refrain from negotiating independently. "Giving the insured the power to control the settlement of his own case would raise the possibility that the insured, inexperienced in evaluating claims and desiring to avoid potential excess liability, would settle in cases in which litigation would result in no liability." Note, 41 *S. Cal. L. Rev.* *120, 126 (1968)*. The efficient disposition of claims dictates that the one party with the expertise, the carrier, be in sole control. If it be otherwise, there is created the risk of claimants playing off the insurer against the insured, holding out for the higher stakes the insured will pay if the insurer does not because of the threat of excess liability.[3] The ad-

---

[3]See Keeton, *op. cit., supra* at 1166 :

The obvious reason for the policy provision giving company such exclusive control over the settlement decision is to keep down claims costs. If insured controlled the settlement decision, self-interest would induce him to make higher settlements (up to policy limits) because of the desire to avoid the personal risk of excess liability. Recognition of a power in insured to make a settlement binding company is inconsistent with the fundamental premise that the liability insurance system will work more effectively if company controls the defense and settlement than if either of these matters is left to insured.

In a failure to defend situation, the fundamental premise indicated by Keeton is destroyed. Since the control of the defense has been abdicated, the only way to keep both insured's liability and claims costs down is to empower the insured to defend and settle.

verse cost effects would of course end up being borne by the insured public.

This Court, in *Radio Taxi Service, Inc. v. Lincoln Mutual Ins. Co.*, 31 *N. J.* 299, 305 (1960) recognized the necessity for granting the insurance carrier complete retention of control over negotiation and litigation.[4] Justice Francis, speaking for the majority, pointed out that it is this very right of control which spawns the insurer's duty to make a good faith effort at settlement:

> The company, by the contract, reserved the right to control the settlement of claims. *Such right is a necessary incident of the operation of its business.* Because the insured is prohibited from interfering with this right, however, manifestly its exercise must be accompanied by considerations of good faith. A decision not to settle must be an honest one. It must result from a weighing of probabilities in a fair manner. To be a good faith decision, it must be an honest and intelligent one in light of the company's expertise in the field. [emphasis added].

In *Bowers v. Camden Fire Ins. Assoc.*, 51 *N. J.* 62, 70–71 (1968) the Court reiterated that it was the insurer's reserved control of the settlement of claims that gave rise to the duty of good faith.

Consequently, if the insurer wrongfully refuses to settle, it will become liable for any excess verdict. The Court in *Rova Farms Resort v. Investors Ins. Co., supra,* 65 *N. J.* at 492, noted that "it may be tempting for the insurance company to gamble on the outcome of a trial" by not settling. If the insurer chooses to gamble, it may do so, but not with the *insured's* money; if it takes an unreasonable gamble and looses, the insurer must pay the price. It is that jeopardy which Security faced here. At the risk of

---

[4] I am not, of course, here speaking of those cases in which the company is plainly in a conflict of interest situation with its own assured. For my view of that problem see *Rova Farms Resort v. Investors Ins. Co.*, 65 *N. J.* 474, 507, 509–10 (1974) (concurring opinion).

extending an unbecoming metaphor, I would hold that if Security was willing to incur the unhappy consequences of its own folly, it should have been permitted to roll the dice itself. If not, and if (as here occurred) the insured takes over the gaming table, it should be at the insured's own risk. It contracted for the expertise of its carrier; if the insurer is exercising such expertise, to allow the insured to second-guess the carrier, settle, and then contest the carrier's judgment would be to undercut one of the essential purposes of the insurance policy.

The considerations discussed above reflect still another fundamental bar to recovery here. The theory of the majority is that plaintiff should recover because of Security's breach of its implied contractual obligation to make a decision concerning settlement in good faith. However plaintiff has not demonstrated damage or injury consequent upon Security's alleged breach, and, indeed, could not, unless the case first went to trial and resulted in a judgment in excess of the Security policy limits.

A showing of damage is ordinarily an essential requirement for a judgment for damages in an action for breach of contract. *Ruane Development Corp. v. Cullere*, 134 *N. J. Super*. 245, 252 (App. Div. 1975). Subsequent to the time of plaintiff's unilateral settlement here, there were all of the following possibilities in the malpractice action, each negating damage to this plaintiff, had the case not then been settled: (a) later settlement by defendant before or during trial; (b) judgment for claimant for less than the policy limits; (c) judgment for the defendant; and (d) a judgment for claimant for more than the policy limits from which plaintiff would have had to be made harmless by Security as a matter of law (on the assumption of bad faith refusal by Security to settle, accepted by the majority opinion). Plaintiff's action aborted all of these possibilities. Plaintiff has thus failed to show, as required under elementary contract law, that Security's failure to settle before

plaintiff did caused plaintiff any damages — specifically the $50,000 for which it was awarded damages below.

I see today's decision as fraught with the potentiality for mischievous consequences, as an unwarranted intrusion upon the insurance carrier's contracted-for right to control its own destiny, and as contrary to established law and sound public policy. I would reverse and enter judgment for defendant.

Justice MOUNTAIN and Judge CONFORD join in this opinion.

*For affirmance*—Chief Justice HUGHES, Justices SULLIVAN and PASHMAN and Judge KOLOVSKY—4.

*For reversal*—Justices MOUNTAIN and CLIFFORD and Judge CONFORD—3.