**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2470-16T4

RAYMOND C. ELLINGTON, SUNIDA
RODRIGUEZ, GREGORIO RODRIGUEZ,
SUNIRLIZA RODRIGUEZ and
FRANKLIN CRUZ,

    Plaintiffs-Respondents,

v.

CURE AUTO INSURANCE a/k/a
CITIZENS UNITED RECIPROCAL
EXCHANGE,

    Defendant-Appellant.

_____

Argued May 15, 2017 — Decided July 20, 2017

Before Judges Nugent, Currier and Geiger.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No. L-
3293-16.

Scott J. Tredwell argued the cause for
appellant (McCormick & Priore, P.C.,
attorneys; Mr. Tredwell and Robert J. Cahall,
of counsel and on the brief).

Alex Lyubarsky argued the cause for
respondents (Wilentz, Goldman & Spitzer,
attorneys; Randall J. Richards, of counsel;
Mr. Lyubarsky, on the brief).

Richard J. Williams, Jr., argued the cause for amicus curiae Insurance Council of New Jersey and Property Casualty Insurers Association of America (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Mr. Williams, of counsel; Eric Siegel, on the brief).

PER CURIAM

This is a bad faith action. Plaintiffs are the insured, Raymond C. Ellington, and the four people he injured (the personal injury plaintiffs) when the car he owned and operated crashed into the rear of the sport utility vehicle they occupied. Defendant CURE Auto Insurance a/k/a Citizens United Reciprocal Exchange (CURE) issued the personal automobile insurance policy that insured Ellington's automobile. The personal injury plaintiffs sued Ellington in the underlying action. Those parties settled the case by entering into a consent judgment for an amount in excess of CURE's policy limits. They settled after CURE initially failed to respond to a demand to settle the case within its policy limits.

On leave granted, CURE appeals from a Law Division order denying its motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. The Law Division judge also denied CURE's motion for reconsideration. Applying the standards that narrowly circumscribe the scope of appellate review, and viewing the complaint with the liberality

required by those standards, we can glean from the complaint and documents on which it is based a cause of action for bad faith. For that reason, we affirm the Law Division orders.

I.

A.

Because we are reviewing an order denying CURE's motion to dismiss plaintiffs' complaint, we recount the material facts alleged in the complaint as well as the material facts contained in the documents on which the complaint is based. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005).

Plaintiffs' complaint alleges that on September 4, 2011, Ellington owned a motor vehicle that he operated "in such a manner so as to cause it to strike the rear of the [personal injury plaintiffs'] automobile." The complaint further alleges Ellington and his vehicle were insured under a CURE automobile liability policy with "bodily injury liability limits of only $25,000/$50,000."[1] The policy's liability coverage provides: "We will pay damages for 'bodily injury' . . . for which any 'insured' becomes legally responsible because of an auto accident. . . . We

---

[1] The policy's declaration page confirms the policy limits were $25,000 per person, $50,000 per accident. The personal injury plaintiffs commenced a personal injury action against Ellington on April 26, 2013.

will settle or defend, as we consider appropriate, any claim or suit asking for these damages."

According to the bad faith complaint, on February 7, 2014, ten months after filing the personal injury action, counsel for the personal injury plaintiffs wrote a demand letter to Ellington's attorney. The letter is the cornerstone of plaintiffs' bad faith claim. It states in relevant part:

> This letter will serve as confirmation of our recent telephone conversation, wherein you advised that at the time of the subject accident your client, Raymond Ellington, was insured by an automobile policy . . . which contained policy limits of only $25,000/$50,000. Unfortunately, in view of the severity of the injuries suffered by the numerous plaintiffs involved in this action, I believe that any good-faith evaluation of this matter will result in recognition of the fact that those policy limits are clearly insufficient to compensate the victims for the injuries suffered as a result of the subject accident. The claims of the various plaintiffs are outlined below:
>
> A. Sunirliza Rodriguez. Suny Rodriguez is a 26-year-old female who suffered splenic lacerations, left-sided rib fractures of ribs 6, 7, and 8 with resultant left pneumothorax, and cervical and thoracic sprains and strains which have failed to respond to trigger point injections. In order to assist in your evaluation of her claim, I am enclosing herewith the following records:
>
> . . . .
>
> B. Sunida Rodriguez. Sunida is a 51-year-old female who suffered significant

orthopaedic injuries including a central disc herniation at L4-5 with L5 nerve root impingement and generalized disc bulging at L3-4 and L5-S1. She was initially seen in the emergency room at UMDNJ Medical Center with complaints of low back pain and thereafter . . . underwent a course of physical therapy and thereafter injections . . ., which failed to provide relief of her pain. Lumbar discography was performed on December 14, 2012, which produced concordant pain at L4-5 and L5-S1. Surgical consult was obtained with [a doctor], who recommended lumbar fusion at L4-5. That surgery was performed on December 12, 2013, and the operative report is enclosed herewith. We have enclosed herewith the following records regarding the claim of Sunida Rodriguez for your review and evaluation:

. . . .

C. Franklin Cruz. Franklin is a 31-year-old machine operator who suffered disc herniations at L4-5 and L5-S1. He was initially seen in the emergency room of UMDNJ . . . . An MRI performed on January 6, 2012, confirmed the presence of disc herniations at L4-5 and L5-S1. When a conservative course of physical therapy failed to provide relief of his symptoms, he was referred to [a doctor] who performed epidural injections which provided only temporary relief of his symptoms. With respect to Franklin, I have enclosed herewith the following medical records:

. . . .

D. Gregorio Rodriguez. Gregorio is a 51-year-old machine operator who suffered a large laceration of his scalp requiring multiple stitches to repair, as well as significant orthopaedic injuries including a dorsal annual fissure at C4-5 with resultant spondylosis,

as well as a disc herniation at C5-6. He has undergone extensive orthopaedic treatment, including conservative therapy and interventional pain management without relief of his symptoms. Cervical fusion has been recommended and is presently under consideration. With respect to Gregorio I have enclosed herewith the following records:

. . . .

I trust that after review of the enclosed records, you will recognize that the combined values of the subject claim far exceed your client's available policy limits. Be advised that, notwithstanding the foregoing, we are prepared to recommend settlement for those policy limits provided same are tendered within 30 days of the date hereof. Following expiration of the aforesaid time frame, we will actively prepare this matter for trial and will not thereafter consider settlement within the available policy limits.

The foregoing offer is conditioned upon your submission of satisfactory proof of the limits of your client's insurance policy limits, the absence of any excess policy, and the subrogation rights of any UIM carrier (pursuant to Longworth).

I trust that your carrier is aware of the fiduciary obligation to its insured imposed by Rova Farms and its progeny and that they will move expeditiously to resolve these claims at this time.

I await your advice with respect to the foregoing.

The bad faith complaint continues:

7. Notwithstanding [CURE'S] awareness that the value of the claims presented far exceeded

A-2470-16T4

the available policy limits, [CURE] failed to respond to the settlement offer of February 7, 2014; failed to seek an extension of time within which to respond to said offer; and negligently or intentionally failed to advise Ellington that an offer of settlement within the available policy limits had been advanced.

8. The actions of [CURE] in failing to appropriately respond to or take advantage of the settlement opportunities within the available policy limits were designed to promote the interests of [CURE] to the detriment of its insured, [Ellington].

Plaintiffs further allege in the bad faith complaint that CURE's actions "departed from accepted standards of claims handling practices, constituted a breach of its contractual obligations to Ellington and further constituted a breach of defendant's obligation of good faith and fair dealing to its insured, . . . Ellington."

The bad faith complaint next alleges that eleven months after CURE failed to respond to the February 7, 2014 settlement demand, CURE belatedly tendered its policy limits in a letter dated January 8, 2015. Counsel for the personal injury plaintiffs rejected CURE's "belated tender of its policy limits" and counteroffered "to settle for said policy limits together with an assignment of Ellington's claims against" CURE for breach of its fiduciary obligations to Ellington. CURE rejected the counteroffer in a

letter dated February 2, 2015, asserting "that no settlement would be authorized if it allowed the pursuit of claims against" CURE.

The complaint alleges that four days later, on February 6, 2015, CURE deposited its $50,000 policy limits into court "but continued to oppose any settlement which would not also extinguish claims against CURE for its handling of the underlying tort action against . . . Ellington." According to the complaint, "[i]n so acting, defendant, CURE . . . expressly elevated its interests over those of its insured . . ., squandering the opportunity of settlement which would have protected Ellington from the entry of judgment against him."

The bad faith complaint next summarizes the events culminating in the personal injury action's settlement. On April 23, 2015, the personal injury plaintiffs' claims against Ellington were arbitrated as required by Rule 4:21A-1(a)(1). The arbitration award for the four personal injury plaintiffs, taken together, was $1,300,000. On June 19, 2015, during a settlement conference, Ellington's attorney advised counsel for the personal injury plaintiffs that "CURE had withdrawn its previous conditions placed upon settlement and would allow Ellington's private counsel to negotiate settlement, utilizing CURE's funds which had been paid into [c]ourt in whatever manner best served Ellington's interests." By then, however, the personal injury plaintiffs

"were no longer willing to engage in settlement which would protect Ellington from the entry of judgment against him."

On September 15, 2015, counsel for Ellington and the personal injury plaintiffs "entered into a settlement agreement which provided for prompt payment of all funds paid into [c]ourt and required pursuit of claims against CURE for its breach of fiduciary obligation of good faith and fair dealing in its handling of the [personal injury action]." The bad faith complaint alleges the settlement "resulted in the entry of judgment against Ellington in the gross cumulative amount of $1,155,000 ($145,000 less than the cumulative arbitration award . . .)." The judgment "was a direct and proximate result of [CURE's] wrongful conduct and/or bad faith in the handling of [the personal injury action]." Plaintiffs allege in their complaint that CURE's mishandling of the personal injury action constituted a breach of its contractual and fiduciary obligations to its insured in failing to properly evaluate and settle the personal injury action; constituted bad faith; and caused its insured, Ellington, to suffer damages, including entry of the judgment.

## B.

On June 3, 2016, plaintiffs commenced this bad faith action by filing their complaint. CURE filed a motion to dismiss the complaint for failure to state a claim upon which relief can be

9

granted. On October 13, 2016, the trial court issued a preliminary opinion denying the motion. Following oral argument, the trial court entered an order dated October 14, 2016, denying the motion. CURE filed a motion for reconsideration, which the court denied. This appeal followed.

## II.

CURE argues that New Jersey law does not recognize a bad faith claim in the absence of an excess verdict or an improper disclaimer of coverage, neither of which exists here. CURE asserts that plaintiffs are advancing a novel cause of action and that a recognition of such action would abrogate "all insurers' contractual right to control the defense and settlement of claims." Lastly, CURE argues that allowing the claim to proceed would reward an uncooperative, unresponsive insured who preemptively breached the insurance policy.

Amicus Insurance Council of New Jersey and Property Casualty Insurers Association of America (Insurance Council) argues that unreasonable, unilateral, time-restricted settlement demands made in bad faith do not support a bad faith claim against an insurance carrier. Insurance Council also argues that if an insurer has defended its insured and tendered its policy limits, it is entitled to rely upon the terms of the insurance contract and cannot be

held responsible to pay an excess judgment entered into voluntarily by the insured without the consent of the insurer.

Plaintiffs respond that the trial court did not create a novel cause of action when it denied CURE's motion. Rather, the trial court correctly analyzed and applied controlling New Jersey precedent. Plaintiffs assert the trial court properly recognized that CURE has misconstrued existing precedent to avoid the merits of their claims. Plaintiffs also argue that CURE's assertion that the consent judgment was collusive "raises an issue that is separate and distinct from CURE's bad faith failure to promptly settle all claims against Ellington within the policy limits" when the opportunity to do so presented itself. Plaintiffs urge us to reject CURE's argument concerning Ellington's breach of the insurance policy because CURE did not raise the arguments before the trial court.

As to Insurance Council, plaintiffs assert Insurance Council has raised new arguments on appeal never raised by CURE and thus never considered by the trial court. Plaintiffs also argue that out-of-state cases cited by Insurance Council are contrary to existing New Jersey law.

Replying to plaintiffs' arguments, CURE claims plaintiffs' opposition is based on the erroneous premise that non-negotiable terms of the contingent settlement demand can be retroactively

modified. CURE reiterates that the cause of action pleaded by plaintiffs is novel. CURE insists that this appeal can be decided in its favor under existing New Jersey law, but such a result is also supported by the case law of other jurisdictions. CURE points out that it has raised no coverage defenses in its merits brief, and did not participate in the settlement between Ellington and the personal injury plaintiffs.

### III.

### A.

Given the broad scope of the parties' arguments, we emphasize the narrow scope of our review. Rule 4:6-2 states in relevant part: "[T]he following defenses . . . may at the option of the pleader be made by motion, with briefs: . . . (e) failure to state a claim upon which relief can be granted." Rule 4:6-2 also states: "If, on a motion to dismiss based on the defense numbered (e), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R[ule] 4:46, and all parties shall be given reasonable opportunity to present all material pertinent to such motions."

A motion to dismiss a complaint under Rule 4:6-2(e) "must be based on the pleadings themselves." Roa v. Roa, 200 N.J. 555, 562 (2010). For purposes of the motion, the "complaint" includes the

"exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Banco Popular, supra, 184 N.J. at 183 (quoting Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir.), cert. denied, 543 U.S. 918, 125 S. Ct. 271, 160 L. Ed. 2d 203 (2004)).

Such motions "should be granted only in rare instances and ordinarily without prejudice." Smith v. SBC Commc'ns, Inc., 178 N.J. 265, 282 (2004). This standard "is a generous one." Green v. Morgan Props., 215 N.J. 431, 451 (2013).

> [A] reviewing court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary. At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.
>
> [Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citations omitted).]

Nonetheless, a court must dismiss a complaint if it fails "to articulate a legal basis entitling plaintiff to relief." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div.), certif. denied, 185 N.J. 297 (2005). "[A] pleading should be dismissed

if it states no basis for relief and discovery would not provide one." Rezem Family Assoc., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div.), certif. denied, 208 N.J. 366 (2011).

Our review of a trial court's order dismissing a complaint under Rule 4:6-2(e) is plenary. Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012), certif. denied, 213 N.J. 45 (2013). We apply the same standard as the trial judge. Malik v. Ruttenberg, 398 N.J. Super. 489, 494 (App. Div. 2008).

B.

In the case before us, we must determine whether we can glean from the pleadings a cause of action against CURE for bad faith. We thus consider the duty an insurer owes its insured. In Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 496 (1974), our Supreme Court recognized a cause of action against an insurer whose bad faith in refusing to settle a personal injury action within its policy limits exposed its insured to a jury verdict substantially in excess of the policy limits. The Court clearly and unequivocally explained the insurer's duty of good faith:

> We . . . hold that an insurer, having contractually restricted the independent negotiation power of its insured, has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage. Any doubt as to the existence of an opportunity to settle within the face amount of the coverage or as to the ability and willingness of the insured to pay

any excess required for settlement must be resolved in favor of the insured unless the insurer, by some affirmative evidence, demonstrates there was not only no realistic possibility of settlement within policy limits, but also that the insured would not have contributed to whatever settlement figure above that sum might have been available. [Young v. American Cas. Co., 416 F.2d 906, 911 (2d. Cir. 1969).]

[Ibid. (emphasis added).]

An insurer's fiduciary duty requires it "to make an honest, intelligent and good faith evaluation of the case for settlement purposes and to weigh the probabilities in a fair manner." Fireman's Fund Ins. Co. v. Security Ins. Co. of Hartford, 72 N.J. 63, 69 (1976). And though liability policies generally reserve to the insurer the right to investigate claims against the insured,

it is recognized the considerations of good faith and fair dealing require that the insurer make such an investigation within a reasonable time. If the insurer delays unreasonably in investigating and dealing with a claim asserted against its insured, the insured may make a good faith reasonable settlement and then recover the settlement amount from the insurer, despite the policy provision conditioning recovery against the insurer on its policy on the prior entry of a judgment against the insured or acquiescence by the insurer in the settlement.

[Id. at 73 (citations omitted).]

In Fireman's Fund, the Court rejected the insurer's contention that there could be no recovery against it based on the

settlement made by its insured because no judgement had been entered and because it had not authorized the settlement. Id. at 69-70. The Court noted that "[w]hile the right to control settlements reserved to insurers is an important and significant provision of the policy contract, . . . it is a right which an insurer forfeits when it violates its contractual obligation to the insured." Id. at 71 (citations omitted). The Court also rejected the insurer's attempt to distinguish cases holding an insurer loses its right to control settlements in cases involving a breach of the contractual duty to defend. The Court explained that such distinction "ignores that there is also embodied in the policy contract an implied covenant of good faith and fair dealing with which the insurer must comply before seeking to rely on the powers reserved to it by the language of the policy contract . . . ." Id. at 72. The Court noted: "That [the insurer's] breach was not of its expressed covenant to afford its insureds a defense but rather of its implied covenant to exercise good faith in considering an offer to settle for an amount in excess of its policy limits is of no moment." Id. at 72-73.

Depending on whether an insurer's breach is that of its duty to defend, or "its implied obligation to make a timely investigation of the claim[,] or of its implied obligation to exercise, in good faith and with concern for the interests of the

insured, its reserved power with respect to settlements[,]" damages are essentially the same. Id. at 78. "[T]he measure of the insured's damages is either the amount of the judgment entered against the insured in the negligence action or the amount paid by the insured in making a reasonable good faith settlement of the negligence action before trial." Ibid. As our Supreme Court noted, "[w]here the measure of recovery is the amount paid in settlement, the defaulting insurer receives all the protection to which it is entitled from the requirement that the insured, in establishing his damages, prove — as was done here — that the settlement was made in good faith and for a reasonable amount." Id. at 79.

C.

Considering the allegations of the complaint and the fiduciary duties of CURE under the principles governing our narrow scope of review, we can readily glean from the complaint a bad faith cause of action. Construing the complaint with liberality, it clearly alleges facts and circumstances demonstrating CURE did not take the initiative and attempt to negotiate a settlement within its policy coverage. To the contrary, the complaint alleges CURE disregarded an opportunity to explore settlement within its policy limits and then waited nearly eleven months — long after it knew the personal injury plaintiffs would no longer accept the

policy limits to settle — before following up with them or tendering the policy limits. These allegations state a claim that CURE "delay[ed] unreasonably in investigating and dealing with [the] claim asserted against its insured." Id. at 73. As the Supreme Court explained in Rova Farms, "[a]ny doubt as to the existence of an opportunity to settle within the face amount of the coverage . . . must be resolved in favor of the insured." Supra, 65 N.J. at 496.

Lastly, the complaint contains sufficient allegations that the value of the personal injury plaintiffs' collective claims clearly exceeded the limits of CURE's automobile liability policy, a fact known to CURE long before CURE tendered its policy limits.

We emphasize the limited nature of our holding. We have concluded we can glean a bad faith cause of action from the complaint; nothing more. We perceive that CURE and Insurance Council, in advancing their arguments, have blurred the distinction between the standards for determining, on the one hand, whether pleadings state a cause of action upon which relief can be granted, and, on the other hand, whether summary judgment is appropriate.

For example, both CURE and Insurance Council attempt to narrowly frame the issue before us as whether a bad faith claim can be based on "a unilaterally set, [thirty-day] time frame to

tender . . . $50,000 liability proceeds based on a vague request without any meaningful discovery or opportunity to evaluate the case." We do not so hold, and we do not view the trial court's opinion as so holding. The scant record, confined as required to plaintiffs' complaint and documents referenced therein, do not support such a proposition. The record does not disclose — nor could it be expected to disclose on a motion under <u>Rule</u> 4:6-2(e) — the extent of CURE's opportunity to evaluate plaintiffs' claims, and the extent of the information CURE had before receiving plaintiffs' demand letter. Nor does the record disclose why CURE waited so long to tender its policy limits. The reasons may be perfectly legitimate, but they are unknown on this limited record.

Similarly, CURE's claims — not raised before the trial court — that Ellington failed to comply with policy conditions are based on information outside of the pleadings. The same is true of Insurance Council's argument that the settlement agreement was the product of collusion and bad faith.

Significantly, in <u>Rova Farms</u>, the Supreme Court noted the rule requiring the carrier to form its judgment as though it alone were liable for the entire risk "may be polluted by institutional considerations which ignore the interests of the specific insured involved." <u>Id.</u> at 499 (citation omitted). The Court pointed out:

A-2470-16T4

These considerations may extend to a purpose to keep future settlement costs down, to numb the public's claim-consciousness, to create a conservative image for the discouragement of future claimants or to establish favorable precedents, none of which purposes has anything to do with the protection of the particular insured at hand. Such efforts, it might be hoped, would result in overall savings to the company by discouraging the pressing of marginal claims or by creating a body of low-verdict cases which could be used as a bargaining tool in settling subsequent claims. . . . Institutional interests of this nature might be pursued by carriers whether or not they were liable for the entire amount of a specific adverse verdict; yet it is generally the insured in the particular case who has had to bear the burden of any excess loss stemming from such an "institutional" decision not to settle.

[Ibid. (citation omitted).]

Whether, as CURE and Insurance Council argue, CURE was reasonably diligent in investigating the personal injury plaintiffs' claims and tendered their policy limits in a sufficient manner; or whether, as plaintiffs contend, CURE violated its fiduciary obligation by failing to timely investigate the claims and settle within the policy limits even when it was clear the personal injury claims exceeded those limits; are issues that cannot be resolved on a motion made pursuant to Rule 4:6-2(e).

We add that Insurance Council's assertion the settlement was a product of collusion and bad faith raises some interesting issues. One interpretation of the settlement agreement is that

20

the personal injury plaintiffs will file warrants of satisfaction immediately upon conclusion of this bad faith action, regardless of the outcome. That construction suggests that if plaintiffs recover nothing under the bad faith action, the personal injury plaintiffs will collect nothing further from Ellington.[2] If that is so, then there is a significant question as to whether Ellington will ever have to pay a sum in excess of the policy limits. Resolution of that issue may have a bearing on the viability of plaintiffs' bad faith cause of action. We express no opinion as to that issue. The trial court may decide to conduct discovery and entertain dispositive motions on that issue before permitting the parties to engage in other extensive discovery. We leave that matter to the trial court's sound discretion.

We have considered CURE's and Insurance Council's remaining arguments and determined they are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

The trial court's order denying the motion to dismiss the complaint for failure to state a cause of action is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] During oral argument, plaintiffs' counsel was unable to confirm whether such was the case, as he did not participate in drafting the settlement agreement.

A-2470-16T4