Bergan, J.
Plaintiff was the masonry subcontractor for an apartment construction project in which Dayton Construction Co., Inc. was the general contractor. One of the terms of the agreement between them was that the prime contractor would provide for plaintiff liability insurance covering, among other things, property damage caused by plaintiff’s operation. The premium for this coverage was to be paid by plaintiff.
*345 Defendant Security Mutual Insurance Company of New York issued a general “ wrap-up ” policy to Dayton in which plaintiff was named as an additional insured. In the course of construction Dayton claimed that plaintiff had negligently caused damage of $15,648 to the roof which had been installed by another subcontractor, and demanded payment in this amount.
At the time the general contractor pressed plaintiff for payment of the claimed roof damage, there was owing to plaintiff from the general contractor about $80,000 as final payment for work performed. Plaintiff’s affidavit in the record shows the general contractor ‘‘ refused to make final payment, unless it was reimbursed for the damage which it claims plaintiff caused ”.
There was withheld from the amount owed plaintiff the $15,648 which the general contractor claimed and this resulted in a settlement between the two in which the balance of the amoupt earned by plaintiff was paid. The affidavit of plaintiff’s president asserts that plaintiff “ had no choice but to make its own settlement with the general contractor ”.
This action is against the insurer for recovery under the terms of the policy. It is clear that damage due to the negligence of plaintiff in the course of its work was a covered risk. The insurer asserts a defense under two provisions of the policy. One provision is that the insured shall not “ voluntarily make any payment ” on any risk within the obligation of the policy; and the other is that no action shall lie against the insurer unless the insured shall have complied fully with all the terms- of the policy, nor until the amount of the insured’s obligation “ shall have been finally determined either by judgment * * * or by written agreement of the insured, the claimant and the company.”
Defendant’s motion for summary judgment has been granted by the Appellate Division, reversing the Special Term, on the ground the policy provisions had not been complied with and there was no triable issue. The Special Term had been of opinion there was a factual issue. The answer alleges that defendant had not been given notice of the damage as soon as practicable ; that it was not notified “ of the pendency of said claim ” and that “ the first notice of the alleged claim ” was the service of the summons and coxpplaint on the defendant.
*346 Plaintiff undertook to show in opposition to the motion for summary judgment that the company had been advised of the damage for which it covered plaintiff; that defendant’s failure to act and the pressure resulting from the withholding of the large amount due for work performed compelled plaintiff to agree to the offset for damage; that the resulting settlement was nót “ .voluntary ” within the intention of the policy; and that the need for the insurer to join into a written agreement of settlement was waived.
Defendant examined the plaintiff’s president Philip Rosen before trial and it was partly on the basis of this examination, referred to in an affidavit of defendant’s vice-president, that defendant’s motion for summary judgment was made. - This testimony disclosed that plaintiff resisted the claim for damage by the general contractor but “ They were holding a lot of my money for a long time, and this is something that I was more or less forced to go into.”
When the deduction was made by the general contractor, a release was given to plaintiff and on the examination before trial Mr. Rosen testified he could not recall “ after ” such release what he did about notifying defendant of the claim. The affidavit óf the defendant’s vice-president in support of the motion reiterates in terms what the answer alleges: ‘' that neither the plaintiff nor anyone in its behalf gave notice to the defendant nor was [it] consulted with reference to the payment ”.
Plaintiff’s opposing affidavit, by Mr. Rosen, takes sharp issue with this statement. He says: “ When the claim was made against the plaintiff, plaintiff notified the defendant, but defendant did absolutely nothing to adjust or otherwise process the claim. The net result was that when the time for final payment came, the general contractor refused to make final payment, unless it was reimbursed for the damage which it claims plaintiff caused; and which damage, if any, was covered under defendant’s insurance policy.” The affidavit added that the defendant would neither ‘ ‘ assert nor deny” its “ coverage ” and that plaintiff was placed in an “ untenable position ” because of the large amount of money being held up “because defendant remained completely inactive under its insurance policy ”. He added that defendant did not “care how much of plaintiff’s money was being tied up, it merely sat back and waited
*347 Defendant’s vice-president made a reply affidavit addressed to this, in which he said ‘' I note * * * that it is claimed that the plaintiff notified the defendant of the claim being made ” for damage to the roof. He adds this significant- statement: “ Whether this is so or not is not in issue on this motion.”
This on its face, and seen against the specific statements in Mr. Eosen’s affidavit, seems an admission that what defendant asserted in its answer, " that neither the plaintiff nor anyone in its behalf gave notice to the defendant ”, is wrong; and that notice of it, was in fact given. Whether defendant knowingly sat idle with notice of the claim asserted by the coinsured general contractor and with knowledge. of. the pressure that could be brought from that relationship, is another matter and hot resolved by the affidavits.
Nor is the exact sequence of events conclusively shown. At one point in the examination before.trial plaintiff’s president indicated that he did not know of the “ exact amount ” 'of the claim until the final settlement with the general, contractor .was due, and at another that he did not recall what was done “ after ” the release in notifying the insurance company of the claim; but at other points in the: record he is unequivocal in stating the insurer had timely notice of the nature of the claim and the risk of liability (aside from the exact amount); and did nothing abbut it until the .general contractor squeezed him into settlement.
The New York rule is that where an insurer “ ‘ unjustifiably refuses to defehd a suit, the insured may make a reasonable settlement or compromise of the injured party’s claim, and is then entitled to reimbursement from the. insurer, even though the policy purports to avoid liability for settlements made without the insurer’s consent ’” (Matter of Empire State Sur. Co., 214 N. Y. 553, 563, opn. per Seabury, J., restated in Cardinal v. State of New York, 304 N. Y. 400, 410).
But'the insurer’s obligation to act in good,: faith for the. insured’s.interests may be breached in other ways than by refusing or neglecting to defend a suit. It may be breached by neglect and failure to act protectively when the insured is compelled to make settlement at his peril; and unreasonable delay by the insurer, in dealing with a claim, may be one form of refusal to perform which could justify settlement cby the insured.
*348 This seems the general rule: ‘' The provision against settlement by insured cannot be taken advantage of by insurer, where it unreasonably delays to take any action, after notice of the claim ” (45 C. J. S., Insurance, § 937, subd. b, p. 1072; see Home Ind. Co. v. Snowden, 223 Ark. 64; Interstate Cas. Co. v. Wallins Creek Coal Co., 164 Ky. 778).
The Supreme Court of Nebraska, in Otteman v. Interstate Fire & Cas. Co. (172 Neb. 574), dealt with a problem closely similar to the one now here. The insurer over a period of seven months failed to act on the insured’s report and subsequent inquiries about á claim within the policy. The-insured settled the claim without the insurer’s consent and was allowed to recover against the insurer notwithstanding■ a policy provision against settlement by the insured and a provision requiring the written consent of the insurer.
The court noted as a general rule in “ All jurisdictions ” that a ‘ ‘ denial of liability ’ ’ relieves the insured from the obligation not to settle (172 Neb., at p. 579). The opinion equated an unreasonable delay in acting to denial of liability.
The conclusion was: “ We have no hesitancy in finding that the evidence amply discloses an unreasonable, delay on the part of the defendant in processing the plaintiff’s claim. We further find that such delay amounted to a denial of coverage and constituted a waiver of any right to insist on the policy provision regarding defense or settlement” (p. 583). The decision in Interstate Cas. Co. v. Wallins Creek Coal Co. (supra) was cited as d leading authority on the effect of unreasonable delay in taking any action. (See, also, Appleman, Insurance Law and Practice, Vol. 7A, § 4714.)
A triable issue of fact is presented in the present, case on the issue whether defendant unreasonably delayed taking action on the negligence claim against plaintiff under circumstances where it had notice of the claim and knew or ought to have known of economic pressure for settlement exerted by the general contractor, also its insured, in such fashion as to waive the provisions of its policy against settlement by the insured without its permission in writing.
The order should be reversed and the motion for summary judgment denied, with costs.