JEFFERSON FEDERAL SAVINGS AND
LOAN ASSOCIATION, Appellant,

v.

BERKS TITLE INSURANCE
COMPANY, Appellee.

No. 82–521.

District of Columbia Court of Appeals.

Argued March 16, 1983.

Decided Feb. 23, 1984.

Kenneth C. Bass, III, Washington, D.C., with whom E. Tillman Stirling, Washington, D.C., was on brief, for appellant.

George F. Paxton, Bethesda, Md., for appellee.

Before KERN and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

TERRY, Associate Judge:

Appellant sued appellee for payment of a claim under a title insurance policy. The trial court, after a non-jury trial, entered judgment for appellee. We reverse.

I

In 1976 Jerry Rosenberg obtained a loan from appellant, Jefferson Federal Savings and Loan Association. The loan was secured by a deed of trust on a parcel of real estate which Mr. Rosenberg had recently inherited from his father. The Riggs National Bank was named trustee under the deed of trust. Appellee, Berks Title Insurance Company, issued a standard policy to Jefferson insuring the title to the property.

After making several payments, Mr. Rosenberg defaulted on the loan. Jefferson foreclosed on the deed of trust, and the property was sold in October 1977. The purchaser was unable to get the required financing, however, and had to forfeit his deposit. The sale was canceled, and the property was again offered for sale. Mean-

while, on January 2, 1978, a federal estate tax lien was filed against the Rosenberg property.

In February 1979 the property was sold again at a second foreclosure sale. As in the previous sale, however, the purchaser failed to settle on the contract and forfeited his deposit. Once more the property was advertised for sale.

At the third foreclosure sale, which took place in November 1979, Jefferson itself purchased the property. Out of the sale proceeds Riggs paid off the tax lien. After making deductions for other expenses, Riggs returned $12,290.10 to Jefferson Federal. Jefferson in turn credited that amount to Mr. Rosenberg's loan, leaving a balance due of $23,237.19, which was approximately the amount of the tax lien.

Jefferson sought reimbursement from Berks under the title insurance policy for the money which Riggs had paid out of the sale proceeds to satisfy the tax lien, money which would otherwise have come to Jefferson. Berks denied Jefferson's request on the ground that Jefferson had not complied with paragraph 7(c) of the policy's "Conditions and Stipulations." Jefferson then filed suit, and the trial court ruled in Berks' favor. We conclude that paragraph 7(c) was irrelevant to the validity of Jefferson's claim under the policy. We further hold that the failure of Berks, over a period of more than eleven months, to effect the removal of the lien barred it from relying on paragraph 7(a), which required Berks to act "within a reasonable time" after receiving notice of the lien.[1] We therefore reverse the judgment of the trial court and remand this case with directions to enter judgment for Jefferson.

## II

"Deeds of trust are viewed as generally equivalent to common law mortgages, a mortgage being by definition an interest in property given as security for a debt." *Yasuna v. Miller,* 399 A.2d 68, 71–72 (D.C.App. 1979) (citation and footnote omitted). The trustee under a deed of trust owes fiduciary duties to both the debtor-mortgagor and the creditor-mortgagee. *Perry v. Virginia Mortgage & Investment Co.,* 412 A.2d 1194, 1197 (D.C.App.1980); *National Life Insurance Co. v. Silverman,* 147 U.S.App.D.C. 56, 72, 454 F.2d 899, 915 (1971); *Holman v. Ryon,* 61 App.D.C. 10, 13, 56 F.2d 307, 310 (1932).

When foreclosing on a deed of trust, "the mortgagee and the trustees must satisfy subordinate mortgages, judgments or liens against the property from the surplus in their possession before turning it over to the mortgagor." *Paroni v. Quick,* 211 A.2d 765, 768 (D.C.App.1965); *accord, W.A.H. Church, Inc. v. Holmes,* 60 App.D.C. 27, 30, 46 F.2d 608, 611 (1931).[2] Similarly, if there is a senior encumbrance or lien on the property, such as the federal estate tax lien in this case, the trustee must satisfy that lien before applying the sale proceeds to the obligation secured by the deed of trust. *See Detroit Bank v. United States,* 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304 (1943); *United States v. Vohland,* 675 F.2d 1071 (9th Cir.1982).

After the second unsuccessful attempt to sell the property at a foreclosure sale, Riggs was notified by Berks on February 15, 1979, of the existence of the federal estate tax lien.[3] On June 12 the Internal Revenue Service informed Riggs that the lien had priority over Jefferson's secured debt under

---

1. In other words, we hold that eleven months was not a reasonable time.

2. In the case of a judicial foreclosure, the court may enter a judgment for any deficiency if what was owed on the debt is more than what was realized at the sale. D.C.Code § 45–716 (1981). When a foreclosure sale results from the power of sale conferred by the deed of trust, a civil action may be brought by the

creditor for the amount of the deficiency. *See Finley v. Friedman,* 159 A.2d 668 (D.C.Mun. App.1960); *Hoffman v. Sheahin,* 73 App.D.C. 374, 121 F.2d 861 (1941).

3. This was the date of the first notice in writing. A trust officer from Riggs testified that Riggs "had heard by telephone previously" about the lien.

the deed of trust. Riggs wrote to Berks on June 22, requesting that Berks settle the outstanding tax lien. Ellington Norman, head of the Trust Department at Riggs, also had a number of telephone conversations with Charles Mitchell, vice president of Berks, in which Mitchell told Norman that the matter was under investigation and that Berks "would take whatever action was required." Communications eventually broke down, however, apparently as a result of Mitchell's failure to return Norman's telephone calls. Finally, on August 2 Norman wrote a second letter to Mitchell demanding "an immediate settlement within ten days." Despite this demand, Berks did not satisfy the lien. Therefore, after the property was sold to Jefferson in November at the third foreclosure sale, Riggs paid off the tax lien on January 21, 1980, before crediting Jefferson, as the foreclosing creditor, with the proceeds of the sale.[4]

■ Paragraph 7 of the "Conditions and Stipulations" of the title insurance policy, captioned "Limitations of Liability," provides in pertinent part:

No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, lien or encumbrance insured against hereunder, by litigation or otherwise, removes such defect, lien or encumbrance or establishes the title, or the lien of the insured mortgage, as insured, *within a reasonable time* after receipt of such notice, ... or (c) for liability *voluntarily assumed by an insured* in settling any claim or suit without prior written consent of the company. [Emphasis added.]

Section (c) of paragraph 7 refers to liability "voluntarily assumed by an insured." In this case, it was not Jefferson, the insured, who settled the estate tax lien, but Riggs, the trustee. Therefore, section (c) was not a bar to appellant's claim under the policy. *Cf. Endruschat v. American Title Insurance Co.,* 377 So.2d 738, 742 (Fla.Dist.Ct.App. 1979).

■ This leaves section (a) as Berks' only possible defense to liability. Under this section, Jefferson could not bring a claim against Berks if, after being notified of the lien, Berks removed it "within a reasonable time after receipt of such notice ...." It is undisputed that the lien in this case was not removed by Berks. The question then becomes whether a reasonable time for Berks to act on the lien had elapsed by the time the lien was paid by Riggs. Given the facts in this case, we hold that Berks' delay of more than eleven months was unreasonable, and that Berks therefore cannot rely on section (a) to avoid liability.[5] *See Otteman v. Interstate Fire & Casualty Co.,* 172 Neb. 574, 579–581, 111 N.W.2d 97, 101–102 (1961); *Isadore Rosen & Sons, Inc. v. Security Mutual Insurance Co.,* 31 N.Y.2d 342, 291 N.E.2d 380, 339 N.Y.S.2d 97 (1972).

Jefferson procured title insurance from Berks to make sure that it would recover the amount of Rosenberg's debt secured by the deed of trust, and to guard against just such a contingency as the lien at issue in this case. Although Berks did not deny that the tax lien was covered under the policy, it contested the amount of the lien and was engaged in negotiations about it with the IRS. Be that as it may, Riggs as trustee had a fiduciary obligation to satisfy

---

4. Mr. Mitchell testified that Berks retained an accounting firm to investigate the tax lien and find out the extent of Berks' liability, if any. Berks also attempted to persuade Mr. Rosenberg to give the accounting firm his power of attorney to deal with the Internal Revenue Service with respect to the tax lien, but Mr. Rosenberg refused. In addition, Berks contacted the Chicago Title Insurance Company, which had insured the title to a second parcel of land belonging to the estate of Mr. Rosenberg's father. While all this was going on, Mr. Mitchell

stated, Berks discovered that Riggs had paid off the lien.

5. It was in fact Berks who notified Riggs in writing on February 15, 1979, of the existence of the lien. Obviously, Berks must have had knowledge of the lien before it could tell Riggs about it, and thus its obligation under section (a) to remove the lien arose no later than that date. Riggs paid off the lien on January 21, 1980, more than eleven months later.

the tax lien before it could pass clear title to any purchaser under a foreclosure sale. A title that is subject to a federal tax lien is obviously not a clear title. Berks knew that two attempts had already been made to sell the Rosenberg property as a result of the foreclosure; in fact, it apparently became aware of the lien when it was examining the title records in anticipation of the second sale. It could reasonably have expected Riggs to try to sell the property a third time. Knowing that clear title could not pass to a purchaser until the lien was removed, Berks owed a duty to its insured, Jefferson, to resolve its own doubts about the lien before Riggs paid it off from the proceeds of the third sale.

It follows that Jefferson is entitled to recover on its claim under the policy. We remand this case to the trial court with directions to enter judgment in an appropriate amount in Jefferson's favor.

*Reversed and remanded.*