# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AIG SPECIALTY INSURANCE COMPANY f/k/a CHARTIS SPECIALTY INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, and LEXINGTON INSURANCE COMPANY, | § § § § § § § § | No. 35, 2024 <br><br> Court Below: Superior Court of the State of Delaware <br><br> C.A. No. N18C-12-074 |
| Defendants Below, Appellants, | § § § § | |
| v. | § § | |
| CONDUENT STATE HEALTHCARE, LLC, f/k/a XEROX STATE HEALTHCARE, LLC, f/k/a ACS STATE HEALTHCARE, LLC, | § § § § § § § | |
| Plaintiff Below, Appellee. | § § § | |

Submitted: October 30, 2024
Decided: February 3, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **GRIFFITHS**, Justices, and **OSTROSKI**, Judge,[*] constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Kenneth J. Nachbar, Esquire (*argued*), Megan Ward Cascio, Esquire, Courtney Kurz, Esquire, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, Delaware; Michael A. Barlow, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Wilmington, Delaware; John L. Reed, Esquire, Peter H. Kyle,

---

[*] Sitting by designation under Del. Const. art. IV, § 12 and Supreme Court Rules 2(a) and 4(a) to complete the quorum.

Esquire, DLA PIPER LLP, Wilmington, Delaware; Michael B. Carlinsky, Esquire, Maaren A. Shah, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York; Derek L. Shaffer, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C.; Robert S. Harrell, Esquire, MAYER BROWN LLP, Houston, Texas *for Defendants Below, Appellants AIG Specialty Insurance Company and Lexington Insurance Company*.

Robert J. Katzenstein, Esquire, Julie M. O'Dell, Esquire, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Neal M. Glazer, Esquire, Izak Weintraub, Esquire, LONDON FISCHER LLP, New York, New York *for Defendant Below, Appellant ACE American Insurance Company*.

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Lisa S. Blatt, Esquire (*argued*), Matthew B. Nicholson, Esquire, WILLIAMS & CONNOLLY LLP, Washington, D.C.; Robin L. Cohen, Esquire, Adam S. Ziffer, Esquire, Keith McKenna, Esquire, Orrie A. Levy, Esquire, COHEN ZIFFER FRENCHMAN & MCKENNA LLP, New York, New York *for Plaintiff Below, Appellee Conduent State Healthcare, LLC*.

**SEITZ**, Chief Justice:

This appeal involves an insurance coverage dispute. A Superior Court jury found that Conduent acted in bad faith and fraudulently arranged to settle litigation with the State of Texas to secure insurance coverage. The jury also found that Conduent could have cooperated with and sought its insurers' consent before settling but failed to do so. Interestingly, the jury decided that Conduent did not collude with Texas or settle unreasonably. The Superior Court granted a new trial because of evidentiary missteps at trial. It also made several post-trial legal rulings. On appeal, the Insurers argue that the Superior Court exceeded its discretion by granting a new trial and erred in its post-trial rulings. We affirm.

I.

A.

The State of Texas hired Conduent in the early 2000s to administer its Medicaid program. In 2012, Texas began investigating Conduent for allegedly helping orthodontics offices overbill for services. Texas sued several orthodontic providers in 2014 to recover payments. In turn, the providers sued Conduent ("Provider Actions"). Texas thereafter terminated its contract with Conduent. In its termination letter, the State claimed that Conduent materially breached its contract with Texas by failing to establish a prior authorization review process with qualified clinical staff. The same month, the State of Texas sued Conduent under the Texas

Medicaid Fraud Prevention Act for civil penalties and injunctive relief ("State Action").

Conduent was insured by AIG Specialty Insurance Company as the primary insurer. ACE American Insurance Company, Lexington Insurance Company, and others were excess insurers (all the carriers collectively, "the Insurers").[1] The excess insurance policies followed form with the primary policy. Although Conduent submitted the Provider Actions and the State Action to the Insurers for coverage, they provided defense coverage only for the Provider Actions. The State Action, the Insurers claimed, alleged fraudulent conduct excluded by the policies.[2]

During settlement negotiations in December 2018, Conduent insisted that Texas amend its petition to support breach of contract and negligence claims. The parties went back and forth removing and then reinserting language in draft

---

[1] *Conduent State Healthcare, LLC v. AIG Specialty Ins. Co.*, 2021 WL 2660679, at *1–2 (Del. Super. Ct. Jan. 4, 2024) [hereinafter *Summ. J. Op.*]. The other insurers included Ironshore Specialty Insurance Company, Aspen Specialty Insurance Company, Indian Harbor Insurance Company, General Security Indemnity Company of Arizona, Navigators Specialty Insurance Company, StarStone Specialty Insurance Company, and QBE Specialty Insurance. All but QBE have settled. The court granted QBE's summary judgment motion early on, but QBE nominally remains a defendant in the absence of a final judgment by the Superior Court. *Id.* at *6; *see* Super. Ct. Civ. R. 54(b). QBE has not joined this appeal.

[2] App. to Appellants' Opening Br. at 2449 [hereinafter A__] (Letter from AIG to Conduent denying coverage for the State Action, June 26, 2014) ("[T]he State Action . . . alleges that [Conduent] knowingly or intentionally made false statements or misrepresentations and knowingly omitted or concealed material information . . . . [T]here is no coverage available for any Loss that [Conduent] may incur . . . .").

4

settlement agreements that suggested Texas "was prepared to amend the State action to add causes of action for breach of contract and negligence."[3]

B.

Meanwhile, Conduent sued its Insurers, who maintained their coverage denials.[4] On December 15, 2018, Conduent notified the Insurers about the proposed settlement with Texas and the plan to amend its petition to add breach of contract and negligence claims. With the "hope and expectation that [the Insurers] would change their coverage positions and agree to contribute to funding a settlement," Conduent asked each carrier to advise Conduent of their position by December 19.[5] The Insurers continued to deny coverage for the State Action.[6]

On February 15, 2019, Texas filed its third amended petition ("Third Amended Petition"), which added causes of action for breach of contract and negligence. Three days later, Texas and Conduent settled Texas's claims for $235

---

[3] A1337 (Tr. 355:8–9, Trial Day 4, Feb. 17, 2022); *see* A1052 (Tr. 36:5–18, Trial Day 2, Feb. 15, 2022).

[4] *See* App. to Appellee's Answering Br. at B1049–50 [hereinafter B__] (Email from AIG to Conduent, Oct. 17, 2018) ("[T]here is no coverage for the Attorney General's lawsuit").

[5] A3500 (Email from Conduent to the Insurers discussing the State Action and a settlement, Dec. 15, 2018).

[6] A0170 (Am. Compl., Mar. 20, 2019); *see, e.g.*, B1057 (Email from AIG to Conduent, Dec. 19, 2018) ("As we have discussed in prior communications, [AIG] has denied coverage based on the information available to it. . . . You have not provided us with any additional information that would change our view.").

million.  Conduent did not seek the Insurers' consent before settling.  The parties allocated all "monetary losses" to the breach of contract damages that "resulted from alleged failures to comply with obligations."[7]  "No portion of the Settlement Amount" was allocated to "fines, penalties, or other punitive assessments."[8]  After Texas and Conduent settled, Conduent provided the Insurers the Third Amended Petition and settlement agreement.  Conduent also amended the pending Superior Court complaint to plead that the Insurers breached their duties to defend and indemnify Conduent for the settlement payment and attorneys' fees.

On June 23, 2021, the Superior Court issued several decisions resolving pretrial motions.[9]  Relevant to the appeal, the court held that New York substantive law governed the dispute, the Insurers breached their duty to defend Conduent in the State Action, and Conduent established a *prima facie* case that the Insurers had a duty to indemnify Conduent for the Texas settlement.  The court also found that two of the Insurers' affirmative defenses could proceed to trial – that Conduent breached its duties to cooperate and seek consent before settling; and that the settlement arose through fraud or collusion with Texas.  At trial, the jury was asked to decide both

---

[7] A3714 (Settlement Agreement between Texas and Conduent, Feb. 18, 2024).

[8] A3715.

[9] *See Summ. J. Op.* at *8.

defenses, as well as whether Conduent's settlement was reasonable and negotiated in good faith.

C.

The trial was plagued by evidentiary issues, as well as multiple events of overreaching and disregard for the court's rulings – some of which the court assumed responsibility for. For example, the court admitted a deposition on written questions from the Texas Office of the Attorney General ("OAG") that, in hindsight, was "so replete with evidentiary problems" – hearsay, inability to cross-examine the witness, and lack of personal knowledge – that it should have been excluded "despite the agreement of the parties."[10] The deposition became a "central focus" of the trial.[11] The Insurers also repeatedly violated the court's rulings by drawing "improper inferences" from Conduent's privilege logs, arguing that the Insurers "never had any coverage obligation to Conduent," and referred to an inadmissible press release in front of the jury.[12]

After a six-day trial, the jury found in a special verdict form that Conduent had not shown that cooperating and seeking consent from the Insurers would have

---

[10] *Conduent State Healthcare, LLC v. AIG Specialty Ins. Co.*, 2023 WL 2256052, at *14 (Del. Super. Ct. Jan. 4, 2024) [hereinafter *New Trial Op.*].

[11] *Id.*

[12] *Id.*

been futile. It also found that Conduent breached its duty to cooperate and failed to take reasonable steps to seek consent before settling. Finally, the jury found that Conduent engaged in fraud to arrange the settlement, and that it had not settled in good faith. The jury did not find that Conduent colluded with Texas or settled unreasonably.[13]

D.

Conduent moved to set aside the jury verdict and requested a new trial. It also moved for judgment as a matter of law that the Insurers' refusal to defend the State Action relieved Conduent of its duties to cooperate and seek consent. The Superior Court concluded that the evidentiary issues likely "confused the jury and tainted the jury's verdicts."[14] It reasoned that the jury's verdict might have reflected this confusion, as the jury found fraud and bad faith, but neither collusion nor an unreasonable settlement. To "prevent manifest injustice," the court set aside the jury verdict and ordered a new trial.[15]

In the same opinion, the court found as a matter of law that Conduent was relieved of its duties to cooperate and seek consent before settling with Texas. Though the jury found that cooperating and seeking consent was not futile, the court

---

[13] A1667–70 (Verdict Form, Feb. 22, 2022).

[14] *New Trial Op.* at *14.

[15] *Id.*

8

ruled that, under New York law, an insured is excused from those duties if an insurer unjustifiably denies defense coverage or repudiates coverage. The court found that the Insurers had done both.

Finally, the Insurers moved for judgment as a matter of law that Exclusion 3(a), the fraud exclusion, barred coverage. The policy excludes claims related to "dishonest, fraudulent, criminal or malicious act[s], error[s] or omission[s], or any intentional or knowing violation of the law."[16] The court denied the motion and granted summary judgment to Conduent.[17] It held that, because Texas's Third Amended Petition had "numerous allegations arising from alleged breaches of contract," Exclusion 3(a) could not defeat coverage.[18] We accepted an interlocutory appeal from the court's post-trial decisions.

## II.

## A.

We start with Exclusion 3(a). As noted above, the Superior Court ruled that the policy's fraud exclusion did not bar indemnity coverage because the Third Amended Petition raised non-excluded breach of contract claims. The court also

---

[16] A2350 (Insurance policy issued by AIG to Conduent, May 12, 2012).

[17] *Conduent State Healthcare, LLC v. AIG Specialty Ins. Co.*, 2024 WL 55372 (Del. Super. Ct. Jan. 4, 2024).

[18] *Id.* at *4.

relied on the fact that the settling parties allocated all the settlement damages to the contract allegations. The Insurers argue on appeal that, under New York law, the court should have looked to the "gravamen" of the Third Amended Petition. According to the Insurers, the "gravamen" of the State Action sounded in "fraud, dishonesty, or knowing violations of law" and was therefore excluded from coverage. We review the coverage question *de novo*.[19]

Exclusion 3(a) provides as follows:

> **3. EXCLUSIONS**
> This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:
> (a) alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law . . . .[20]

The parties agree that a "**Claim**" includes the Third Amended Petition.[21] They also agree that a "**Loss**" includes the settlement payment.[22] The only question on appeal, therefore, is whether the settlement payment of the State Action is a loss entirely "alleging, arising out of, based upon or attributable to" fraud.

---

[19] *USAA Cas. Ins. Co. v. Carr*, 225 A.3d 357, 360 (Del. 2020) ("The interpretation of an insurance policy is a question of law and subject to *de novo* review.").

[20] A2350 (Insurance policy issued by AIG to Conduent, May 12, 2012).

[21] A2349–50.

[22] A2350.

10

Under New York law, indemnity exclusions are given a "strict and narrow construction" and interpreted in favor of coverage.[23]  To exclude a loss, the entire loss must fall within the exclusion.[24]  In other words, when a covered loss occurs with an excluded loss, the loss that falls outside the exclusion is still a covered loss. An insurer cannot refuse to indemnify the covered portion of a loss by pointing to the "gravamen" of the complaint.

Here, the loss did not fall entirely within the exclusion.  Although the Third Amended Petition alleged Medicaid fraud, Conduent settled based on the contract claims in the Third Amended Petition.  The parties allocated roughly $212 million to breach of contract damages and $23.5 million to attorneys' fees and expenses.[25]

The Insurers rely on a plain meaning argument.  They claim that, under Exclusion 3(a), a Loss "in connection with" a "Suit" "alleging" fraud means that if a suit alleges fraud, coverage is unavailable.  Their reading is unreasonable.  It would mean that the mere fact that a complaint contains a fraud claim would allow the insurer to escape all coverage obligations even if, like here, the complaint alleges

---

[23] *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 908 N.E.2d 875, 877 (N.Y. 2009) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)); *Cragg v. Allstate Indem. Corp.*, 950 N.E.2d 500, 502 (N.Y. 2011).

[24] *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006) (quoting *Allstate Ins. Co. v. Mugavero*, 589 N.E.2d 365, 368 (N.Y. 1992)).

[25] A3714 (Settlement Agreement between Texas and Conduent, Feb. 18, 2019).

facts supporting a non-fraud claim.[26]  It also reads "Loss" out of Exclusion 3(a).  A Loss incurred because of fraud is not covered.  Here, the settlement loss was incurred and allocated to breach of contract damages.  Exclusion 3(a) does not bar indemnity coverage for a settlement allocated to breach of contract allegations.  We affirm the Superior Court's ruling that Exclusion 3(a) did not bar coverage.[27]

## B.

Next, the Insurers argue that the Superior Court erred when it ruled that the Insurers' breach of the duty to defend Conduent during the State Action excused Conduent's contractual obligation to cooperate and seek consent before settling.  They claim that they disclaimed, not repudiated, coverage, and that Conduent's failure to provide them the Third Amended Petition prevented the Insurers from making a new coverage decision.[28]  We review questions of law *de novo*.[29]

---

[26] *Cf. Gibbs v. CNA Ins. Cos.*, 693 N.Y.S.2d 720, 722 (App. Div. 1999) ("[I]t is our privilege to determine the nature of the claim alleged in the complaint, *based upon the facts alleged* and not the conclusions which the pleader draws therefrom." (emphasis added) (quoting *Cnty. of Columbia v. Cont'l Ins. Co.*, 595 N.Y.S.2d 988, 990 (App. Div. 1993), *aff'd,* 634 N.E.2d 946 (N.Y. 1994))).

[27] The Insurers will have another opportunity to litigate their affirmative defenses that Conduent arranged the settlement through fraud or collusion.  If the Insurers are successful, they will have no duty to indemnify Conduent regardless of the exclusion provision.

[28] The Insurers also rely on the jury verdict to argue that Conduent could have cooperated and sought consent, and Conduent's failure to do so breached both duties.  But the verdict was set aside in the post-trial order that we affirm in this decision.  Accordingly, the verdict and any inferences drawn from it have no impact on our decision.

[29] *Jud. Watch, Inc. v. Univ. of Del.*, 267 A.3d 996, 1003 (Del. 2021) (quoting *Del. Dep't of Nat. Res. & Env't Control v. Sussex Cnty.*, 34 A.3d 1087, 1090 (Del. 2011)).

As an initial matter, we note that the Insurers have not appealed the Superior Court's ruling that they breached their duty to defend Conduent in the State Action. Therefore, the only issue on appeal is whether, under New York law, the Insurers' breach of their duty to defend excused Conduent from cooperating with and seeking the Insurers' consent before settling the State Action.

The Court of Appeals, New York's highest court, has held that when an insurer "unjustifiably refuses to defend a suit, the insured may make a reasonable settlement . . . and is then entitled to reimbursement from the insurer, even though the policy purports to avoid liability for settlements made without the insurer's consent."[30]  Here, the Insurers do not contest that they breached their duty to defend

---

[30] *Isadore Rosen & Sons, Inc. v. Sec. Mut. Ins. Co. of N.Y.*, 291 N.E.2d 380, 382 (1972) (quoting *Cardinal v. State*, 107 N.E.2d 569, 573 (N.Y. 1952)); *see In re Empire State Sur. Co.*, 108 N.E. 825, 827 (N.Y. 1915); *see also Am. Ref-Fuel Co. v. Res. Recycling, Inc.*, 722 N.Y.S.2d 570, 571 (App. Div. 2001) (holding the insured "excused from further compliance with its obligations under the policy" after its insurers refused to defend it).  *See generally* Restatement of the L. of Liab. Ins. § 19 (Am. L. Inst. 2019) ("An insurer that breaches the duty to defend a legal action forfeits the right to assert any control over the defense or settlement of the action."); 14A Jordan R. Plitt et al., *Couch on Insurance* § 202:6 (updated 3d ed. 2024) [hereinafter *Couch on Insurance*] ("When an insurer fails to fulfill its duty to defend, it becomes liable for all foreseeable damages flowing from the breach, including amounts paid in settlement."); 1 Ken Brownlee et al., *Excess Liability: Rights and Duties of Commercial Risk Insureds and Insurers* § 4:6 (updated 4th ed. 2024) ("If a policyholder makes a reasonable settlement of a claim or suit brought against him after the insurer has wrongfully denied coverage and defense, the insurer will be required to reimburse the insured for the settlement plus all reasonable expenses incurred in negotiating the settlement within the policy limits, assuming neither negligence nor bad faith was involved. This has been so held even if some undistinguishable item comprising the total verdict may have been questionable as to coverage." (footnotes and citations omitted)).

Conduent and maintained the same stance throughout the litigation. Thus, Conduent was relieved of its cooperation and consent obligations.

The Insurers' attempt to draw a distinction between disclaiming coverage and repudiating coverage is unavailing. They point to *Seward Park Housing Corp. v. Greater New York Mutual Insurance Co.*, where the New York Appellate Division distinguished between the two.[31] As they read *Seward*, if an insurer simply disclaims coverage, which later turns out to be wrongful, its breach does not excuse the insured's other obligations under the policy. Here, the Insurers argue, their coverage disclaimer did not excuse Conduent's cooperation and consent obligations.

The disclaimer/repudiation distinction, however, is irrelevant here. *Seward* and other cases relied on by the Insurers involved an insurer's duty to indemnify, not the duty to defend.[32] The duty to indemnify arises "only once liability has been conclusively determined."[33] By contrast, even a "reasonable possibility of

---

[31] 836 N.Y.S.2d 99, 100 (App. Div. 2007).

[32] *See id*. at 101 ("The plaintiff made a claim for the loss with its insurance carrier, the defendant Greater New York Mutual Insurance Company, under its all-risk, first-party property policy. The claim was denied on December 29, 2000, resulting in this litigation."); *Armstrong v. United Frontier Mut. Ins. Co.*, 121 N.Y.S.3d 488, 490 (App. Div. 2020) ("Plaintiff thereafter commenced this action alleging that defendant breached its contract with her by failing to pay benefits on the claim."); *Fed. Ins. Co. v. SafeNet, Inc.*, 817 F. Supp. 2d 290, 300 (S.D.N.Y. 2011) ("In its complaint, plaintiff seeks declarations concerning its obligations under the excess insurance policies and seeks rescission of the Initial Excess Policy.").

[33] *Couch on Insurance* § 200:3 (Duty to defend distinguished from duty to pay on policy).

14

coverage" requires the insurer to defend.[34]  Under New York law, the Insurers' breach of their duty to defend excused Conduent's duties to cooperate and seek consent before settling.[35]

The Insurers also claim that the filing of the Third Amended Petition "reset" their coverage evaluation obligation, which required Conduent once again to cooperate and request coverage again.  We are not persuaded.  They rely on only one case for the "reset" argument – *Mt. Hawley Insurance v. First Street Ocean Grille*.[36]  The Insurers claim that the decision "held that an amended complaint that 'changed the theory of liability' could reset an insurer's duty to defend."[37]  But when the full quotation is reviewed, it cuts against the Insurers: "The Amended Complaint, however, changed the theory of liability *by removing all factual allegations* of

---

[34] *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 509 (N.Y. 1993) (citing *Fitzpatrick v. Am. Honda Motor Co.*, 575 N.E.2d 90, 92–93 (N.Y. 1991)).

[35] The duty to defend cases relied on by the Insurers are also inapposite.  *See Bear Wagner Specialists LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2009 WL 2045601, at *6–7 (N.Y. Sup. Ct. July 7, 2009) (excusing the insurers' duty to defend because the only possible interpretation of the insured's actions triggered the policy's exclusion provision); *Empire Fire & Marine Ins. Co. v. Estrella*, 2019 WL 6390193, at *5–6 (E.D.N.Y. Sept. 13, 2019) (excusing the insurers' duty to defend and indemnify after it attempted to provide the insured a defense but the insured never responded).  Both cases discuss whether the breach of the duty to defend occurred, not the consequences of a breach.  Here, the Insurers breached their duty to defend.

[36] 2024 WL 1364704 (S.D.N.Y. Apr. 1, 2024).

[37] Appellants' Reply Br. at 15 [hereinafter Reply Br.] (quoting *Mt. Hawley Ins.*, 2024 WL 1364704, at *4).

intentional tortious conduct and replacing them with claims of negligence."[38]  By contrast, the Third Amended Petition had "materially identical allegations" as its original petition – a point the Insurers repeatedly make in their Exclusion 3(a) argument.[39]  As the Insurers state, "[e]very iteration of the State Action was premised on" the same factual allegations.[40]  We agree with the Superior Court that the Insurers' breach of the duty to defend excused Conduent of its duties to cooperate and seek consent.

## III.

The final issue on appeal is whether the Superior Court exceeded its discretion when it granted a new trial on the Insurers' defenses to indemnification.[41]  Even though the Superior Court must afford great deference to a jury's verdict, we will not substitute our "own notions of what is right for those of the trial judge, if his [or her] judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[42]  The question here is whether "the judicial mind in view of the

---

[38] *Mt. Hawley Ins.*, 2024 WL 1364704, at *4 (emphasis added).

[39] Appellants' Opening Br. at 28, 26–27; *see* Reply Br. at 5.

[40] Reply Br. at 2.

[41] *Stillwater Mining Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 289 A.3d 1274, 1282 (Del. 2023) (citing *Harper v. State*, 970 A.2d 199, 201 (Del. 2009)).

[42] *In re Asbestos Litig.*, 228 A.3d 676, 681 (Del. 2020) (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 902 A.2d 1102, 1106 (Del. 2006) (alteration in original)) (reviewing a new trial motion for abuse of discretion).

relevant rules of law and upon due consideration of the facts of the case could reasonably have reached the conclusion of which complaint is made."[43]  Only when a court has "exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice to produce injustice" may we find that it exceeded its discretion.[44]

The Superior Court granted a new trial on three grounds – evidentiary issues with the OAG deposition on written questions; the Insurers' evidentiary missteps at trial; and an inconsistent jury verdict.  After careful review, we will not second-guess the trial court's conclusion that the jury's verdict was tainted by errors that confused the jury and resulted in an unfair trial.

## A.

The Texas OAG refused to provide a witness to testify about the settlement negotiations.  As a substitute, the parties agreed to depose an OAG representative, Raymond Winter, with written questions ("Winter Submission").[45]  His answers covered the settlement negotiations between the parties.  According to the court, his responses contained "double and triple hearsay."[46]  The court suspected that it was

---

[43] *In re Asbestos Litig.*, 228 A.3d at 681 (quoting *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954)).

[44] *Stillwater Mining*, 289 A.3d at 1282 (citing *Harper*, 970 A.2d at 201).

[45] A3737–92 (Winter Submission, Aug. 14, 2020).

[46] *New Trial Op.* at *3.

17

likely to "create a ripple effect of thorny evidentiary issues, for the very reasons that the hearsay rule was designed to prevent."[47] The court, "[a]gainst its better judgment," allowed the parties to use the submission at trial.[48]

The Winter Submission "became a centerpiece of the trial."[49] It offered answers about the "fateful December 14th meeting" where Texas offered Conduent a settlement.[50] But the jury could not judge the credibility of an absent witness. Instead, other witnesses testified to Winter's credibility and bias.[51] The jury was forced to judge the Winter Submission based on second-hand commentary.

Further, Winter lacked personal knowledge of key settlement negotiations. He admitted that he did not attend the December 14 meeting where Texas made its first settlement offer.[52] Yet Winter stated in his responses that the parties decided on a settlement amount at the meeting, with the understanding that other details and terms

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] A0917 (Tr. 123:15–17, Trial Day 1, Feb. 14, 2022) (The Insurers' opening statement); A3500 (Email from Conduent to the Insurers discussing the State Action and a settlement, Dec. 15, 2018).

[51] *New Trial Op.* at *3; *see, e.g.*, A1054 (Tr. 44:8–9, Trial Day 2, Feb. 15, 2022) (Conduent's chief legal counsel: "I see what they say, but Mr. Winters was a rogue attorney in the Attorney General's Office.").

[52] *See* A3775 (Winter Submission, Aug. 14, 2020) (answering "Yes" to a question on whether Winter was absent from the meeting on December 14, 2018); A3500 (Email from Conduent to the Insurers discussing the State Action and a settlement, Dec. 15, 2018).

would still need to be discussed.[53]  Every draft agreement exchanged was connected to the initial meeting Winter did not attend.

Even taken on its own, the Winter Submission was filled with inconsistencies. The Winter Submission stated that the OAG "does not recall discussions regarding [amending the petition] before January 2019."[54]  But he also answered that OAG had removed language that "[Texas] was prepared to amend the State Action to add causes of action for breach of contract . . . and negligence" in its December 21 review of the draft settlement.[55]  He also stated later that the settlement was based on Conduent's Medicaid fraud.[56]  His answers contradict the final settlement agreement that allocated damages based on losses resulting from "failures to comply with obligations . . . under the 2003 Contract and 2010 Contract."[57]

The Insurers contend that because the parties agreed to admit the Winter Submission, it cannot be a ground for a new trial.[58]  We disagree.  The trial judge has

---

[53] *See* A3745–46 (Winter Submission, Aug. 14, 2020).

[54] A3753.

[55] A3747.

[56] *See* A3785 ("[T]he State believes that evidence showed the [Conduent] Defendants committed fraud as prohibited by the TMFPA. . . . [T]here was never an agreement that the settlement would be exclusively on the basis of the [Conduent] Defendants' contractual performance.").

[57] A3714 (Settlement Agreement between Texas and Conduent, Feb. 18, 2024).

[58] Though the Insurers also argue they lacked notice and an opportunity to be heard on this issue, both parties addressed the Winter Submission in post-trial briefing.  *See* A1827–29 (The Insurers'

a duty to make sure "that the rules of practice and evidence are applied . . . with or without objection by counsel."[59]  In hindsight, the judge recognized the error in allowing the parties to use the Winter Submission and the prejudice it caused.  The trial judge was in the best position to assess the consequences of her mistake.

B.

Conduent's privilege logs were admitted at trial, but only as demonstrative exhibits for the "sole and very limited purpose" of showing meeting dates with counsel, the attendees, and general meeting topics.[60]  The court prohibited the Insurers from using the privilege logs "as the basis for arguing that Conduent's attorneys must have advised Conduent in a certain way."[61]  Despite "repeated admonishments" from the court, the Insurers used the privilege logs to imply that Conduent asked its lawyers for advice about how to manufacture coverage before settling with Texas.[62]  Their conduct prejudiced Conduent, the court found, because

---

opposition to Conduent's motion for judgment as a matter of law, Apr. 5, 2022); A1953–54 (The Insurers' motion for reargument, Feb. 21, 2023).

[59] *O'Riley v. Rogers*, 69 A.3d 1007, 1010–11 (Del. 2013) (quoting *State Highway Dep't v. Buzzuto*, 264 A.2d 347, 351 (Del. 1970)).

[60] *New Trial Op.* at *3; *see* A0809 (Letter from the Court to Counsel on the press release and privilege logs, Feb. 12, 2022).

[61] *New Trial Op.* at *5; *see* A0809.

[62] *New Trial Op.* at *5–6; *see, e.g.*, A0925, at 154–55 (Tr. 154:16–155:2, Trial Day 1, Feb. 14, 2022) (using demonstrative to imply that "Conduent was talking about" insurance coverage with counsel "during that fateful critical period right before it settled this case"); A1063–64 (Tr. 81:2–

20

Conduent was forced to choose between simply objecting (which it did) or waiving attorney-client privilege to respond directly to the accusation.

The Insurers argue that they only used Conduent's privilege logs to draw out nonprivileged information. They also claim that they heeded the court's suggestion that they could refer to the "general subject matter" in the logs.[63] According to the Insurers, the only inference they argued was that Conduent was discussing insurance coverage while negotiating with Texas. Our review of the trial transcript, however, confirms that the Insurers were not so disciplined in their opening statement[64] and closing argument[65] by insinuating that the privilege logs showed that Conduent was seeking advice from its attorneys to fabricate insurance coverage.[66]

_____

83:21, Trial Day 2, Feb. 15, 2022) (implying from the absence of topics in the privilege logs that "the only discussion in the context of settlement . . . was insurance claims," not other work contracts).

[63] *See* A0809 (Letter from the Court to Counsel on the press release and privilege logs, Feb. 12, 2022).

[64] *See* A0925 (Tr. 155:12–22, Trial Day 1, Feb. 14, 2022) (suggesting the jury should "notice what it doesn't say" about Conduent's meetings with counsel, such as every meeting discussing insurance coverage and no meeting discussing other contract work).

[65] *See* A1570 (Tr. 231:19–232:7, Trial Day 6, Feb. 21, 2022) (referencing over ninety communications connected to the State Action "going on between the lawyers dealing with the State and coverage counsel" during the "key time period where [Conduent] [is] working on trying to come up with a basis to trigger coverage with the insurers").

[66] The Insurers also argue that Conduent waived its privilege log argument by failing to object contemporaneously during closing arguments. We are satisfied, however, that the proper use of privilege logs was raised throughout trial, preserving the issue for review. *See* A1063–64 (Tr. 81:12–84:3, Trial Day 2, Feb. 15, 2022) (objecting to the Insurers drawing inferences from what the privilege log topics do not show); A1064 (Tr. 84:3–9, Trial Day 2, Feb. 15, 2022) (sustaining the objection after a discussion between the parties).

The Insurers also disregarded the court's order foreclosing the parties from referring to the Insurer's coverage obligations. Before trial, the court barred Conduent from referring to the court's pretrial ruling that the Insurers had breached their duty to defend the State Action. In turn, the court prohibited the Insurers from leading the jury to believe that they did not have coverage obligations or that a coverage exclusion applied.[67] The court sought to avoid jury confusion between the duty to defend and the duty to indemnify.[68]

Although the Insurers' fraud defense required them to prove that Conduent manufactured indemnity coverage through the settlement, the Insurers left the impression at trial that they had no coverage obligations at all. They questioned claims handlers about the reasons for their coverage denials while the State Action proceeded.[69] They also elicited testimony from the same claim handlers that the fines and penalties exclusion and the fraud exclusion likely barred coverage.[70] The

---

[67] *New Trial Op.* at *7; A0713 (Pretrial Conference, Jan. 31, 2022).

[68] *New Trial Op.* at *7; *see* A0698–700.

[69] A1236 (Tr. 25:11–15, Trial Day 4, Feb. 17, 2022) (asking ACE's claims handler "[w]as there any reason in anything, the original first amended petition or second amended petition, gave any basis to ACE to provide a coverage acceptance?," to which she replied, "No."); A1470 (Tr. 63:13–23, Trial Day 5, Feb. 18, 2022) (asking AIG's claims handler if reviewing the first amended petition influenced her coverage response, to which she replied "Yes. It reinforced it. . . . there were more [fraud allegations]").

[70] A1235 (Tr. 24:17–23, Trial Day 4, Feb. 17, 2022) (asking "[w]as there any suggestion in any of those petitions of the Texas State Attorney General seeking a cause of action for a breach of contract?," followed by, "So would it be fair to state that in response to our counterpart's mantra

Insurers' duty-to-defend issues and coverage position pre-settlement had little if anything to do with whether Conduent fraudulently settled the State Action to secure indemnity coverage. By probing these issues, the Insurers caused confusion between indemnity coverage and the duty to defend. Given the court's pretrial ruling, Conduent could not respond to fix the misconception that it had a "guilty conscience" for not cooperating.[71]

Finally, through improper impeachment, the Insurers referred to an inadmissible press release in front of the jury. After the settlement, the Texas OAG issued a press release that characterized the settlement as a "Medicaid Fraud Settlement."[72] The court found that the press release was "unquestionably hearsay" and "had the potential to be unduly prejudicial."[73] It held the press release

_____

denial denial denial was what ACE said was fraud fraud fraud?"); A1468 (Tr. 55:19–56:1, Trial Day 5, Feb. 18, 2022) (following the Texas Supreme Court's explanation of the Medicaid Fraud statute, "we felt comfortable in saying that the fines and penalties exclusion in the policy applied here.").

[71] A1569–70 (Tr. 228:20–229:7, Trial Day 6, Feb. 21, 2022) ("And ask yourself, ask yourself, if [Conduent] really had nothing to hide . . . . There is an expression, guilty conscience tells you everything you need to know."). The Insurers rely on *Storey v. Camper*, 401 A.2d 458, 466 (Del. 1979), to argue that the trial judge committed reversible error when it failed to cite where the Insurers violated this ruling. The judge there, however, wrote a single line in his order for a new trial. Here, although the trial judge did not cite the record for *one* of the factors supporting an order for a new trial, the court's analysis was more than sufficient to support its ruling.

[72] A3730 (OAG Press Release, Feb. 19, 2019).

[73] *New Trial Op.* at *8 ("The Press Release was unquestionably hearsay, had indicia of a lack of credibility and political motivation, there was no date of creation, no author was identified, no cross-examination was possible, and the language directly contradicted the stated terms of the Settlement Agreement. In short, the Press Release had the potential to be unduly prejudicial.").

23

inadmissible.[74]  The court did, however, rule that the press release could be used to refresh a witness's recollection or for impeachment.[75]

During cross-examination, Conduent's witness admitted that Conduent "couldn't be seen as having settled a Texas Medicaid fraud claim."[76]  Then, "without even giving the witness a chance" to answer any predicate questions about how Texas characterized the settlement, the Insurers asked the witness if he knew that "the day after the settlement agreement was signed . . . the Texas Attorney General's Office issued a press release announcing --."[77]  Though counsel was cut off by an objection, the import of the press release was clear – the parties settled the Medicaid fraud allegations.

## C.

After being exposed to testimony and evidence that strayed outside the trial court's pretrial rulings, the jury found that Conduent fraudulently and in bad faith settled the State Action.  At the same time, the jury decided that the settlement was

---

[74] A0808 (Letter from the Court to Counsel on the press release and privilege logs, Feb. 12, 2022).

[75] *See id.*

[76] A1069 (Tr. 105:2–4, Trial Day 2, Feb. 15, 2022).

[77] A1073 (Tr. 9:3–8, Trial Day 2, Feb. 15, 2022); A1069 (Tr. 105:5–10, Trial Day 2, Feb. 15, 2022).

non-collusive and reasonable. The court found the verdicts could be "viewed as contradictory."[78]

The Insurers respond that the verdicts can be reconciled because fraud and bad faith relate to Conduent's conduct, while reasonableness and collusion relate to the terms of the settlement. One might accept their argument. But even if the verdicts might hypothetically be reconciled, common sense suggests that a fraudulent, non-collusive, reasonable settlement arranged in bad faith is a confused verdict. In any event, the court did not rely exclusively on the inconsistent verdicts to order a new trial. The judge had a front-row seat in the trial and believed that manifest injustice occurred through substantial and prejudicial violations of the court's orders.

## IV.

When considering a motion for a new trial, a trial court "must give 'enormous deference' to the jury's verdict."[79] The record reflects that the trial judge did not take lightly the decision to set aside the verdict.[80] The Superior Court's ruling setting aside the jury verdict did not exceed the bounds of reason or ignore the law and

---

[78] *New Trial Op.* at *14.

[79] *LCT Cap., LLC v. NGL Energy P'rs LP*, 249 A.3d 77, 90 (Del. 2021) (quoting *Cuonzo v. Shore*, 958 A.2d 840, 844 (Del. 2008)).

[80] "In almost 20 years on this bench, I have never set aside a jury verdict." *New Trial Op.* at *1.

custom to produce injustice.[81]  The post-trial decisions of the Superior Court are affirmed.

---

[81] *Stillwater Mining*, 289 A.3d at 1282 (citing *Harper*, 970 A.2d at 201).